In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2868

RICARDO LARA-RUIZ,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals
No. A17-761-237

Argued October 26, 2000--Decided March 6, 2001


  Before Bauer, Posner, and Ripple, Circuit Judges.

  Bauer, Circuit Judge.  Ricardo Lara-Ruiz ("Lara-Ruiz") appeals the decision of the Board of Immigration Appeals ("BIA") which found him removable from the United States for committing the "aggravated felony" of "sexual abuse of a minor," and statutorily ineligible for discretionary relief from removal. Lara-Ruiz argues that he did not commit sexual abuse of a minor under 8 U.S.C. sec. 1101(a) (43)(A), and that the application of the recently enacted provisions of the Immigration and Nationality Act ("INA") adding sexual abuse of a minor to the list of aggravated felonies and making Lara-Ruiz ineligible to apply for relief from removal violated his rights to due process and equal protection. We find that Lara-Ruiz did commit sexual abuse of a minor and that he fails to raise any substantial constitutional claims. Therefore, we dismiss his appeal for lack of subject matter jurisdiction.

BACKGROUND

  Lara-Ruiz is a Mexican national who was granted lawful permanent residence in the United States in 1967. In 1994, he was convicted of sexual assault under Ill.Rev. Stat. 1991, ch. 38, para.para. 12-13(a)(1) and sec. 12-13(a)(2). Section 12-13(a)(1) defines "sexual assault" as "commit[ting] an act of sexual penetration by the use of force or threat of force," and sec. 12-13(a)(2) defines it as "commit[ting] an act of

sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent." The record indicates that Lara-Ruiz' victim was a four-year-old girl.

On December 14, 1998, the Immigration and Nationalization Service ("INS") issued a Notice to Appear placing Lara-Ruiz in removal proceedings. The INS charged him as removable because he had been convicted of an aggravated felony under INA sec. 237(a)(2)(A)(iii), codified at 8 U.S.C. sec. 1227(a)(2)(A)(iii). Specifically, the INS charged him with committing sexual abuse of a minor, which is an aggravated felony under sec. 101(a)(43)(A) of the INA, codified at 8 U.S.C. sec. 1101(a)(43)(A).

On February 10, 1999, Lara-Ruiz attended a hearing before an Immigration Judge ("IJ"), during which he conceded alienage but denied removability. The IJ found him removable as charged. The IJ also concluded that because Lara-Ruiz was an alien convicted of an aggravated felony, he was statutorily ineligible for discretionary cancellation of removal under 8 U.S.C. sec. 1229b(a)(3), and that he "d[id] not appear to be entitled to any other relief from removal." Lara-Ruiz appealed to the BIA, arguing that his Illinois convictions for sexual assault did not constitute sexual abuse of a minor and that the application of amendments to the INA which classified sexual abuse of a minor as an aggravated felony and removed his eligibility to apply for discretionary relief from removal was impermissibly retroactive, and therefore violated his due process rights. The BIA dismissed his appeal, finding that his Illinois convictions counted as sexual abuse of a minor, and declined to address his constitutional claim.

Lara-Ruiz appeals the BIA's decision, reasserting the arguments that he made before the BIA, and adding the contention that sec. 212(h) of the INA violates his rights to equal protection under the Due Process Clause of the Fifth Amendment by making lawful permanent resident aliens who commit aggravated felonies statutorily ineligible to receive a waiver of inadmissibility, while leaving illegal aliens who commit the same offenses eligible to apply for such relief. The INS argues that we lack jurisdiction to hear the appeal because Lara-Ruiz is an alien who has been ordered removed as an "aggravated felon" and because his constitutional claims are meritless.

DISCUSSION

A. Jurisdiction

As a preliminary matter, the government argues that sec. 1242(a)(2)(c) of the INA, codified at 8 U.S.C. sec. 1252(a)(2) (C), strips us of jurisdiction to hear Lara-Ruiz' claims. That section provides:

Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2) (A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. sec. 1252(a)(2)(C).

Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Therefore, sec. 1252(a)(2)(C) generally eliminates our jurisdiction to review any final order of deportation against an alien convicted of an aggravated felony. However, we retain jurisdiction to determine whether we have jurisdiction--that is, to determine whether an alien's criminal conviction is indeed an "aggravated felony" under the INA, thereby triggering the jurisdictional bar of sec. 1252(a)(2)(C). See, e.g., Xiong v. INS, 173 F.3d 601, 604 (7th Cir. 1999); Yang v. INS, 109 F.3d 1185, 1192 (7th Cir. 1997). Moreover, in addressing a similar jurisdictional bar announced in an earlier enacted amendment to the INA, we have held that an alien may challenge his deportability on constitutional grounds directly in the courts of appeals, provided that he raises a substantial constitutional claim. See Morales-Ramirez v. Reno, 209 F.3d 977, 980 (7th Cir. 2000); Singh v. Reno, 182 F.3d 504, 509 (7th Cir. 1999); LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998). Thus, while we honor Congress' intent to curtail judicial review of final deportation orders for certain disfavored criminals, we have retained jurisdiction over any substantial constitutional claims raised as a "safety valve" to prevent "bizarre miscarriages of justice." See LaGuerre, 164 F.3d at 1040. However, we have recognized that such direct review of constitutional claims is an "exceptional procedure," see Singh, 182 F.3d at 510, which is available only when the alien raises substantial constitutional claims. See Moralez-Ramirez, 209 F.3d at 981. Thus, in addressing Lara-Ruiz' appeal, we must first determine whether the BIA correctly concluded that Lara-Ruiz was "an alien

deportable by reason of having committed an aggravated felony." If we answer that question in the affirmative, we must then consider whether Lara-Ruiz has nevertheless raised substantial constitutional claims, and we may assert jurisdiction over Lara-Ruiz' claims only if we find that he has./1 As both of these inquiries are jurisdictional in nature, we review them de novo. See, e.g., Solorzano-Patlan v. INS, 207 F.3d 869, 872 (7th Cir. 2000).

   B.   Sexual abuse of a minor

   Lara-Ruiz argues that he is not deportable because his state conviction for sexual assault does not constitute the aggravated felony of sexual abuse of a minor under sec. 101(a)(43)(A). He notes that the crime "sexual abuse of a minor" is defined at 18 U.S.C. sec. 2243(a) as knowingly engaging in a sex act with a person who is at least 12 but not yet 16, and who is at least four years younger than the offender. He argues that the BIA was obligated to use sec. 2243's definition of "sexual abuse of a minor," since this is the only definition of that exact phrase contained in the U.S. Code. Because Lara-Ruiz' victim was not between the ages of 12 and 16, he maintains that he did not commit "sexual abuse of a minor." He also notes that the principle of lenity, which is applicable to deportation proceedings, see INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987), requires us to construe sec. 101(a)(43)(A) narrowly and to resolve all matters of doubt as to its interpretation in his favor. He contends that the BIA violated this principle when it found that he had committed sexual abuse of a minor. We are not persuaded./2

   The phrase "sexual abuse of a minor" is not defined in sec. 101(a)(43)(A), either expressly or by reference to any other statutory provision. In attempting to determine its meaning, the BIA began by noting that it was not obliged to adopt any particular federal or state statutory definition as controlling. However, the BIA went on to note that, since removal proceedings are a matter of federal law, "it is useful to look at federal definitions in determining the meaning of the language used by Congress." With this principle in mind, the BIA turned to consider two federal statutory provisions which it deemed relevant. Specifically, the BIA considered 18 U.S.C. sec. 2241(c), which provides that "[whoever] . . . knowingly engages in a sexual act with another person who has not attained the age of 12 years" has committed the offense of aggravated sexual abuse, and 18 U.S.C. sec. 2246(2)(A), which defines "sexual act" as including contact between the male and female

genitals. The BIA ruled that conduct which fell within the meaning of these two statutory provisions would constitute sexual abuse of a minor under sec. 101(a)(43)(A). The BIA then considered the "conviction documents"/3 relating to Lara-Ruiz' Illinois sexual assault convictions--which established that Lara-Ruiz had intentionally performed a sexual act upon a four-year-old child in that he had initiated the contact of his genitals with the genitals of the victim--and concluded that these actions fell within the ambit of 18 U.S.C. sec.sec. 2241(c) and 2246(2)(A), and therefore counted as the aggravated felony of "sexual abuse of a minor."

We find the BIA's definition of sexual abuse of a minor to be a reasonable construction. In construing a statute, we start by looking to the plain language, giving the words used their ordinary meaning. See Pioneer Inv. Services Co. v. Brunswick Assocs., Ltd. Partnership, 507 U.S. 380, 388 (1993); Komorowski v. Townline Mini-Mart and Restaurant, 162 F.3d 962, 965-66 (7th Cir. 1998). The BIA's decision referred to various federal statutory provisions in an attempt to construct a generic definition of sexual abuse of a minor which was consistent with the ordinary, common-sense meaning of that phrase. Cf. Taylor v. United States, 495 U.S. 575 (1990). The BIA's conclusion that a defendant who initiates contact between his genitals and the genitals of a four-year-old child engages in sexual abuse of a minor certainly comports with the ordinary meaning of that phrase. Indeed, only the most tortured definition of the phrase would exempt such conduct from its reach. While there might be room for doubt as to whether certain kinds of conduct would count as "sexual abuse of a minor," if the phrase has any commonly recognized meaning at all, genital-to-genital contact between an adult and a four-year-old child is included within that meaning./4

However, one further point needs to be addressed. In determining whether Congress intended the phrase "sexual abuse of a minor" to include conduct punished under a particular state statute, we must generally employ a categorical approach; that is, we consider only whether the elements of the state offense of which the alien was convicted--together with the language of the indictment--constitute sexual abuse of a minor, rather than whether the alien's specific conduct could be characterized as sexual abuse of a minor. See United States v. Shannon, 110 F.3d 382, 384-85 (7th Cir. 1997). However, in this case, the BIA looked beyond the Illinois statutory definition of sexual assault, and (apparently) beyond the indictment to determine that Lara-Ruiz had sexually assaulted a minor. It

is likely that the BIA found it necessary to do this because the statute of conviction did not list any particular age of the victim or even the victim's status as a "minor" as an element of the offense, and because the indictment for the offenses of which Lara-Ruiz was ultimately convicted did not mention the age of the victim./5 Nevertheless, we find that it was not improper for the BIA to look beyond the statutory elements and the charging documents in this case. First, the statute under which Lara-Ruiz was convicted would cover conduct that was sexual abuse of a minor and conduct that was not. In such circumstances, sentencing courts can look to the charging document, and if that yields no clear answer, they can look beyond such documents (for example, to the criminal complaint), provided that doing so would not require evidentiary hearings into contested issues of fact. See Xiong, 173 F.3d at 605. Further, in his brief to the BIA, Lara-Ruiz stated that he admitted before the state court that he fondled a four-year-old girl, and that he was convicted of the "Illinois version of 'statutory rape.'" In addition, he has not contested either the BIA's or the INS' assertion that his victim was four years old. Finally, several of his arguments to this Court are premised on the fact that his victim was a very young child./6 Therefore, looking beyond the statutes of conviction and the related indictments in this case would not require an evidentiary hearing into any contested issue of fact, and we find that it was proper for the BIA to do so./7

   Lara-Ruiz further argues that the BIA was obligated to define sexual abuse of a minor by reference to sec. 2243, because that section (and only that section) defines the crime of "sexual abuse of a minor." However, those of our sister circuits that have addressed this argument have rejected it, and with good reason. See United States v. Zavala-Sustaita, 214 F.3d 601, 606 n.8 (5th Cir. 2000); cf. United States v. Baron-Medina, 187 F.3d 1144, 1146 (9th Cir. 1999). Congress did not define sexual abuse of a minor by expressly referencing any other provision of the U.S. Code, as it did with respect to other terms in sec. 101(a) (43). See, e.g, 8 U.S.C. sec. 1101(a)(43)(B), (C), (D), (E), (F), (H), (I), (J), (K), (L), (M), (N), (O) & (P). Congress' decision not to limit sec. 1101(a)(43)(A) in a similar fashion is conspicuous, and it strongly suggests that Congress intended to give a broad meaning to the term "sexual abuse of a minor." See Gozlon-Peretz v. United States, 498 U.S. 395, 404 (1991) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed

that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation omitted); Zavala-Sustaita, 214 F.3d at 607. Moreover, since sec. 2243 creates a substantive federal offense, while sec. 101(a)(43)(A) merely attaches immigration consequences to criminal acts already committed, it would have been reasonable for Congress to intend a broader definition for the latter provision. See Zavala-Sustaita, 214 F.3d at 606 n.8. Finally, as the BIA noted in In re Rodriguez-Rodriguez, Interim Dec. No. 3411, 1999 WL 731793 (BIA 1999), "sexual abuse" is defined more broadly in 18 U.S.C. sec. 3509 than it is in sec. 2243. This further undermines Lara-Ruiz' argument because, even if we were to accept his misguided premise that sec. 101(a)(43)(A)'s definition of sexual abuse of a minor should be exhaustively defined by reference to some other single statutory provision, Lara-Ruiz offers no good reason why we must refer to sec. 2243 rather than to sec. 3509. See id. Finally, we reject Lara-Ruiz' argument that the rule of lenity requires a different result. The rule of lenity directs us to read "ambiguous" statutory provisions narrowly in favor of the alien in deportation proceedings. The rule applies only when "a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." Moskal v. United States, 498 U.S. 103, 108 (1990) (internal quotations omitted). We find that sec. 101(a)(43)(A) is not ambiguous. By considering the ordinary meaning of the words, together with other relevant provisions of the U.S. Code, we conclude that Congress clearly intended the phrase sexual abuse of a minor to cover Lara-Ruiz' conduct. Therefore, the rule of lenity is inapplicable here.

Because we find that the BIA's interpretation of sec. 101(a) (43)(A) as applied to Lara-Ruiz' conduct is reasonable and comports with the ordinary meaning of the language that Congress used in that section, we agree with the BIA that Lara-Ruiz committed the aggravated felony of "sexual abuse of a minor."

## C.  Retroactivity

At the time of Lara-Ruiz' convictions in 1994, sec. 212(c) of the INA gave the Attorney General discretionary authority to grant waivers of deportation for equitable reasons to aliens who had lawfully resided in the United States for at least seven years. See 8 U.S.C. sec. 1182(c) (1994); Jideonwo v. INS, 224 F.3d 692, 695 (7th Cir. 2000) (citation omitted). In 1996, Congress

passed AEDPA, sec. 440(d) of which limited this authority. Specifically, sec. 440(d) amended sec. 212(c) by making aliens who had been convicted of "aggravated felonies" ineligible to receive discretionary waivers of deportation. Congress subsequently repealed sec. 212(c) and replaced it with a new form of discretionary relief called "cancellation of removal," see IIRIRA sec. 304(a), codified at 8 U.S.C. sec. 1229b(a). This new section mirrors AEDPA sec. 440(d) in that it vests the Attorney General with the discretion to grant waivers of removal, but renders aliens who have been convicted of "aggravated felonies" ineligible to receive such relief. Lara-Ruiz contends that the BIA violated due process by applying sec. 440(d) to him, thus making him ineligible for relief. While he concedes that we have rejected arguments challenging the retroactive application of sec. 440(d) to aliens previously convicted of offenses which were classified as "aggravated felonies" at the time of the conviction, see Turkhan v. Perryman, 188 F.3d 814, 828 (7th Cir. 1999); LaGuerre v. INS, 164 F.3d at 1041, he attempts to distinguish his case on the ground that his offense was not defined as an aggravated felony at the time that he was convicted. (Sexual abuse of a minor was added to the list of "aggravated felonies" in IIRIRA sec. 321.)

As a preliminary matter, we must clarify a confusion that pervades Lara-Ruiz' retroactivity argument. Lara-Ruiz objects to the application of AEDPA sec. 440(d) to his case, and both parties cite cases construing the retroactive application of sec. 440(d) to situations wherein deportation proceedings were pending prior to its enactment. In this case, however, the INS began removal proceedings against Lara-Ruiz on December 14, 1998, well after the passage of both AEDPA sec. 440(d), and IIRIRA sec. 304(a), 8 U.S.C. sec. 1229(b)(a). IIRIRA, which was passed on September 30, 1996, contained temporary transitional rules as well as permanent provisions. IIRIRA sec. 309 set April 1, 1997 as its effective date. The transitional rules applied during a "phase-in period ending on IIRIRA's effective date." See St. Cyr v. INS, 229 F.3d 406, 422 (2d Cir. 2000) (Walker, J., dissenting) (citation omitted). (That is, they applied to aliens placed in deportation proceedings prior to April 1, 1997 and whose deportation orders became administratively final on or after October 31, 1996. Cf. Musto v. Perryman, 193 F.3d 888, 890 n.5 (7th Cir. 1999)). Under the transitional rules, the Attorney General retained the discretion to grant waivers of deportation under INA sec. 212(c), as amended by AEDPA sec. 440(d). However, IIRIRA's permanent provisions "repeal[ed] sec. 212(c) altogether and

consolidate[d] prior 'suspension of deportation' relief and aspects of former sec. 212(c) relief into a new form of relief"--namely, cancellation of removal. Richards-Diaz, 233 F.3d at 1163; see also 8 U.S.C. sec. 1229b(a). Therefore, since Lara-Ruiz was placed in removal proceedings after IIRIRA's effective date, to address his retroactivity argument we will have to determine whether sec. 304(a) of IIRIRA applies, thus barring him from receiving a cancellation of removal.

As a lawful permanent resident, Lara-Ruiz is entitled to due process before he may be deported or removed. See Yang, 109 F.3d at 1196. Applying a new law retroactively to conduct completed before its enactment may violate due process if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). Therefore, "there is a presumption against retroactive application of new laws absent a clear congressional intent that the law should be applied to past conduct." Jideonwo, 224 F.3d at 697. Landgraf prescribed a method for determining whether provisions like IIRIRA sec. 304(a) and AEDPA sec. 440(d) may be applied retroactively to pending cases. Landgraf, 511 U.S. at 280. First, we must determine "whether Congress has expressly prescribed the statute's proper reach." Id. at 825. If Congress has clearly indicated that the provision is to be applied either prospectively or retroactively, then we must apply it as Congress directed. See Hughes Aircraft Co. v. United States, 520 U.S. 939, 946 (1997) (ruling that the presumption against retroactivity applies "unless Congress has clearly manifested its intent to the contrary"); Landgraf, 511 U.S. at 280; see also Reyes-Hernandez v. INS, 89 F.3d 490, 492 (7th Cir. 1996). However, if we are unable to discern Congress' intent, then we must resort to judicial default rules to determine whether the statute can be applied retroactively. Specifically, we must ask whether the statute would have a "retroactive effect" if it were applied to conduct which occurred prior to its enactment (that is, whether it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.") If so, we invoke the judicial presumption against applying the provision retroactively.

Under step one of the Landgraf analysis, we find that Congress clearly intended IIRIRA sec. 304(a) to apply to all removal proceedings brought after April 1, 1997. Section 309(a)

states that "the amendments made by [IIRIRA sec.sec. 301-309, which include the repeal of sec. 212(c) and the enactment of sec. 1229(b)] shall take effect on [April 1, 1997]." While it is generally true that "a statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date," Landgraf, 511 U.S. at 257, an examination of IIRIRA sec. 309 reveals that Congress included more than a mere "effective date." Rather, Congress enacted a detailed scheme of both transitional and permanent provisions, which expressly "made certain provisions applicable to certain aliens at certain times, while simultaneously exempting other aliens from other provisions." See Richards-Diaz v. Fasano, 233 F.3d 1160, 1164 (9th Cir. 2000). (For example, section 309(a) expressly exempts sec.sec. 303(b)(2), 306(c), 308(d)(2)(D), and 308(d)(5) from the general effective dates. See id.) This carefully crafted scheme suggests that Congress devoted a good deal of thought to the question of precisely when the various specific IIRIRA provisions should apply, and the fact that it took pains to exempt certain provisions from the general effective date suggests that it intended that those provisions which were not expressly exempted--such as the provision repealing sec. 212(c) relief--should apply to proceedings brought against an alien on and after the effective date. We join the Ninth Circuit in concluding that

[the] legislative scheme of transitional provisions followed by permanent legislation can be reduced to one essential point relevant to IIRIRA's repeal of sec. 212(c): Congress intended the whole of IIRIRA's permanent provisions to apply to every alien as of April 1, 1997, except where it expressly exempted those provisions that were not meant to apply as of that date. The provision repealing sec. 212(c) was not one of them.

Richards-Diaz, 233 F.3d at 1164 (quoting St. Cyr, 229 F.3d at 422 (Walker, J., dissenting)).

Our conclusion that sec. 212(c) waivers of deportation are not available to aliens against whom removal proceedings are brought after IIRIRA's effective date is bolstered by the fact that "deportation" proceedings can no longer be brought against an alien after the enactment of IIRIRA. As we have noted, IIRIRA abandoned the old scheme which included both exclusion and deportation in favor of a new unified scheme which allows only "removal" proceedings. Therefore, "to apply sec. 212(c)'s 'waiver of deportation' relief to an alien subject to an

order of removal under the new provisions would create an 'awkward statutory patchwork sewn together . . . from scraps of the IIRIRA and the former INA.'" Richards-Diaz, 233 F.3d at 1164 (quoting St. Cyr., 229 F.3d at 423 (Walker, J., dissenting)). We agree with the Ninth Circuit that "such [a] construction faces insurmountable hurdles even on a linguistic level." Id. (citing St. Cyr, id.).

We conclude that the application of IIRIRA sec. 304(a) to Lara-Ruiz' case would not be "retroactive." Since the INS brought removal proceedings against Lara-Ruiz after the effective date of sec. 304 (a), we need not determine here whether a statutory provision can be applied to a deportation or removal proceeding that was brought before the provision was enacted. Therefore, cases like Landgraf and its progeny (e.g. LaGuerre, Reyes-Hernandez), which address the application of newly enacted rules to pending cases, are inapposite. In applying sec. 304(a) to Lara-Ruiz' case, the BIA applied the law in effect at the time that it rendered its decision, and therefore did not violate Lara-Ruiz' due process rights. See Angel-Ramos v. Reno, 227 F.3d 942, 948 (7th Cir. 2000) (citing Landgraf, 511 U.S. at 273). Put another way, because his case was not pending before April 1, 1997, Lara-Ruiz had no protected interest in retaining the ability guaranteed by sec. 212(c) to apply for a discretionary waiver of deportation. Cf. Morales-Ramirez, 209 F.3d at 983. Therefore, his "retroactivity" argument raises no substantial constitutional claim.

Moreover, even if preventing Lara-Ruiz from applying for a sec. 212(c) waiver could have some retroactive effect (in that it might attach new legal consequences to his past crimes), we would not find such "retroactivity" impermissible in this case. First, as we have noted, IIRIRA sec. 309 evidences Congress' clear intent to apply the bar on cancellation of removal relief (and by implication, on the now-superseded waiver of deportation relief as well) to all proceedings brought after April 1, 1997. Therefore, under Landgraf, the provision may permissibly be applied to all such cases, regardless of the date of the commission of the offense or the conviction. Second, even if we were to find that Congress' intent regarding the application of IIRIRA sec. 304(a) was ambiguous, Lara-Ruiz cannot show that applying the rule to his case has any impermissible "retroactive effect." We have found such a retroactive effect in the application of AEDPA sec. 440(d) to pending cases in two rather limited circumstances: (1) where the alien has conceded deportability, forgoing a colorable defense to deportability, in reliance

(at least in part) on the potential availability of sec. 212(c) relief, see Reyes-Hernandez, 89 F.3d at 493; and (2) where the alien pled guilty to the underlying criminal offense in reliance (at least in part) on the availability of sec. 212(c) relief. See Jideonwo, 224 F.3d at 697-701. Neither scenario confronts us in this case. Lara-Ruiz contested his removability before the IJ, and as he conceded at oral argument, he fully contested the state criminal charges and did not enter a plea of guilty. He does not argue that his expectation of the availability of the waiver in any way influenced his litigation strategy either in his state criminal proceedings or in his removal proceedings. Indeed, he does not argue that he performed any act or gave anything up in reliance on the potential availability of a sec. 212(c) waiver. The only relevant prior conduct that could conceivably have been influenced by such reliance is his commission of the crimes, and we have already stated that "it would border on the absurd" to argue that an alien would refrain from committing crimes or would contest criminal charges more vigorously if he knew that after he had been imprisoned and deported, a discretionary waiver of deportation would no longer be available to him. See LaGuerre, 164 F.3d at 1041. Thus, Lara-Ruiz cannot seriously maintain that the application of any rule barring discretionary relief from removal or deportation would upset his settled expectations sufficiently to trigger the presumption against retroactivity./8

D.  Equal Protection

Lara-Ruiz argues that, even if we conclude that he has committed an aggravated felony and is therefore removable, he should be eligible for a waiver of inadmissibility under sec. 212(h) of the INA, 8 U.S.C. sec. 1182(h)(1)(B). That section allows the attorney general to waive the application of various subsections of sec. 1182 (which classify certain aliens as ineligible for admission to the United States for certain approved equitable reasons.) However, it also provides that "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . ." 8 U.S.C. sec. 1182(h)(2). The BIA has interpreted this latter provision as barring consideration for sec. 212(h) relief for lawful permanent resident aliens ("LPRs") who have been convicted of aggravated felonies while allowing consideration for such relief for aliens convicted of the same offenses who have never been admitted as lawful

permanent residents. See In re Michel, Interim Dec. No. 3335, 1998 WL 40407 (BIA 1998). Lara-Ruiz contends that this draws an irrational and unjustifiable distinction between LPRs and illegal aliens which violates his right to equal protection under the due process clause of the Fifth Amendment.

This is a question of first impression in this circuit./9 We begin our analysis by noting that our review of decisions made by Congress in the immigration context is extremely limited, and that this is particularly true where the challenged legislation sets criteria for the admission or expulsion of aliens. "The power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments," which is "largely immune from judicial control." Fiallo v. Bell, 430 U.S. 787, 792 (1977). "Over no conceivable subject is the legislative power more complete than it is over the admission of aliens." Id. (Internal quotations omitted). In exercising its plenary power in this area, "Congress regularly makes rules that would be unacceptable if applied to citizens," Congress' decisions in this area are "subject only to narrow judicial review." Id. Therefore, we must uphold federal immigration legislation which distinguishes between classes of aliens if there is any "facially legitimate and bona fide reason for its enactment." See Turkhan, 188 F.3d at 828 (quotation omitted). Under this highly deferential standard of review, if "any reasonably conceivable state of facts" or any "plausible reason" could provide a rational basis for Congress' decision to treat the classes differently, our inquiry is at an end, see id. at 828-29, and we may not test the justification by balancing it against the constitutional interest asserted by those challenging the statute. See Campos v. INS, 961 F.2d 309, 316 (1st Cir. 1992) (citing Fiallo, 430 U.S. at 794-95).

We find that a rational basis exists for Congress' decision to declare only those aggravated felons who have previously been admitted as LPRs ineligible for sec. 212(h) relief. One of Congress' purposes in enacting reforms to the INA through IIRIRA was to expedite the removal of criminal aliens from the United States. Eliminating the availability of sec. 212(h) relief for LPR aggravated felons would eradicate one source of delay that might thwart this effort. As the INS noted in its brief, without section 1182(h)(2), an LPR who is removable as an aggravated felon might apply to adjust his status, and seek re-"admission" to the United States as an LPR. If he could demonstrate that the certain equitable considerations qualify him for "readmission," then he could be granted

a waiver of inadmissibility, thereby evading removal. This would subvert Congress' intention to make such aliens immediately removable. While it might have been wiser, fairer, and more efficacious for Congress to have eliminated sec. 212(h) relief for non-LPR aggravated felons as well, the step taken by Congress was a rational first step toward achieving the legitimate goal of quickly removing aliens who commit certain serious crimes from the country, and as such it should be upheld. ("[A] legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' . . . and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." McDonald v. Board of Election Comm'rs of Chicago, 394 U.S. 802, 809 (1969) (internal quotations omitted)). Moreover, LPRs enjoy rights and privileges by virtue of their status which are not shared by non-LPRs, and they typically have closer and longer-standing ties to the United States through employment and family relationships. Therefore, Congress may rationally have concluded that LPRs who commit serious crimes despite these factors are uniquely poor candidates for relief from removal through the "backdoor" of waiver of inadmissibility. As the INS notes, the Purpose and Summary of the Senate Judiciary Committee on S. 1664 (ultimately enacted as IIRIRA) states that

[a]liens who enter or remain in the United States in violation of our law are effectively taking immigration opportunities that might otherwise be extended to others, potential legal immigrants whose presence would be more consistent with the judgment of the elected government of this country about what is in the national interest."

Sen. Jud. Comm. Rep. No. 104-249 (April 10, 1996), 1996 WL 180026 at *7. In banning only LPR aggravated felons from waiver eligibility, Congress might well have found it significant that, unlike non-LPR aggravated felons, such aliens have already demonstrated that closer ties to the United States and all of the benefits attending LPR status were insufficient to deter them from committing serious crimes. Therefore, Congress might have reasoned that LPR aggravated felons were a higher risk for recidivism, and were generally less deserving of a second chance than were non-LPR aggravated felons. Congress may plausibly have concluded that, if one of these groups should be allowed to apply for a second chance, it should be the non-LPR aggravated felons who did not have all of the benefits of

LPR status when they committed their crimes. Therefore, we find that Lara-Ruiz has failed to state a substantial equal protection claim.

CONCLUSION

We find that Lara-Ruiz committed the aggravated felony of sexual abuse of a minor under 8 U.S.C. sec. 1101(a)(43) (A). We find further that Lara-Ruiz has failed to state any substantial constitutional claims in challenging his final order of deportation. Accordingly, we lack jurisdiction to hear this appeal under 8 U.S.C. sec. 1252(a)(2)(C), and Lara-Ruiz' petition for review is DISMISSED.

FOOTNOTES

/1 In considering whether Lara-Ruiz has stated substantial constitutional claims, we need not assert jurisdiction to hear the claims. Instead, we merely assert jurisdiction to determine whether we have jurisdiction to hear his claims. See Morales-Ramirez, 209 F.3d at 981 n.1 (citations omitted).

/2 Lara-Ruiz also argued that finding aliens who sexually abuse very young children removable would be bad immigration policy because the offenders in such cases are frequently the victim's parent, so deporting the offender would often result in deporting the child victim as well. We decline to consider this argument because, while we have jurisdiction to review final orders of deportation which raise substantial constitutional issues, we do not have jurisdiction to review such orders on policy grounds. Moreover, even if we were to address it, it strikes us that the child victim would be deported in such cases only when the abusing parent retains custody, which might well be the exception rather than the rule.

/3 It is unclear from the record which documents the BIA examined. The only documents in the record which could be described as a "conviction document" does not mention the age of the victim. Moreover, the indictments charging Lara-Ruiz with the offenses of which he was ultimately convicted charge him with initiating contact between his penis and the victim's vagina, but do not mention the victim's age. The only charging documents in the record which do mention her age are the indictments for several offenses for which Lara-Ruiz was never convicted. Finally, at another point in its opinion, the BIA states that the "record" reflects the age of the victim, suggesting that it may have looked beyond the charging and conviction documents to determine

the victim's age.

/4 In addition, we note that the BIA has recently interpreted "sexual abuse of a minor" under sec. 101(a)(43)(A) even more broadly than it did in Lara-Ruiz' case. See In re Rodriguez-Rodriguez, Interim Dec. No. 3411, 1999 WL 731793 (BIA 1999) (interpreting the phrase in reference to 18 U.S.C. sec. 3509(a)(8)'s definition of "sexual abuse," and 18 U.S.C. sec. 3509(a)(9)(D)'s definition of "sexually explicit conduct," and holding that an alien committed sexual abuse of a minor by intentionally exposing himself to a child even though he never made physical contact with the child).

/5 Lara-Ruiz was also charged with violating other Illinois statutes which criminalized various forms of sexual conduct with minors, and the indictments for some of these charges state that Lara-Ruiz' victim was under thirteen years of age. However, for reasons not explained in the record, Lara-Ruiz was found not guilty of those charges, so we may not consider the language in those indictments in determining whether he committed "sexual abuse of a minor."

/6 For example, he argues that he did not commit sexual abuse of a minor under sec. 2243 because his victim was not between the ages of 12 and 16. Moreover, in urging us to interpret sec. 101(a)(43)(A)'s definition of sexual abuse of a minor strictly by reference to sec. 2243 on policy grounds, he argues that it would be bad immigration policy to deport aliens guilty of sexually abusing "very young children," since the abusers of such children are often parents of the child victims, and therefore deporting the offenders would often result in deporting the child victims as well.

/7 While we do not decide the issue, we note that had the INS charged Lara-Ruiz as removable for having committed either of two alternative "aggravated felonies" under sec. 101(a)(43)-- namely "a crime of violence" under sec. 101(a)(43)(F) or "rape" under sec. 101(a)(43)(A)--we likely could have found him removable without looking beyond the statutes of conviction. However, as the INS charged him as removable only on the ground that he committed "sexual abuse of a minor," these issues are not before us.

/8 Citing Turkhan and LaGuerre, Lara-Ruiz concedes that he would have no colorable argument against the "retroactive" application of a provision eliminating sec. 212(c) relief if his crimes were deportable offenses at the time he committed them, but he argues that we should apply a

stricter presumption against retroactivity here because the offenses of conviction were not deportable offenses at the time they were committed. Sexual abuse of a minor was added to the list of deportable "aggravated felonies" in IIRIRA sec. 321, which was enacted after Lara-Ruiz' conviction. Lara-Ruiz notes that, while it might be implausible to suppose that an alien who knows that he faces prison and deportation if convicted would contest the charges any more vigorously if he also knew that he would be unable to apply for a waiver of deportation, the matter is altogether different if the offense is not deportable at the time of the charge. In that case, Lara-Ruiz contends, the alien might be inclined to plead guilty for convenience sake, in reliance on the assumption that there would be no adverse immigration consequences. In short, Lara-Ruiz argues that changing the immigration consequences after the plea is unfair "mouse trapping." We reject this argument for three reasons. First, it amounts to an attack on the application of IIRIRA sec. 321 to his case, and we foreclosed this argument in Xiong. In Xiong, we noted that sec. 321(c) states that "the amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred," and we concluded that "[a]ctions taken" are "actions and decisions of the Attorney General acting through an immigration judge or the BIA." Xiong, 173 F.3d at 607. We ruled that the BIA's dismissal of Xiong's appeal, which occurred after April 1, 1997, was an "action taken" that triggered the application of the new definition of "aggravated felony." See id. Therefore, as Lara-Ruiz' appeal was dismissed by the BIA on July 20, 1999, IIRIRA's new definition of "aggravated felony," which rendered sexual abuse of a minor a removable offense, applies in his case. Second, it has long been recognized that Congress may deport aliens for committing crimes which were not deportable offenses at the time they were committed. See Marcello v. Bonds, 349 U.S. 302, 314 (1955); Chow v. INS, 113 F.3d 659, 667 (7th Cir. 1997) (abrogated on other grounds) (collecting cases). Finally, we agree with Lara-Ruiz that applying such rules to aliens who conceded deportability or pled guilty in reliance on the assumption that they would not be deported might violate due process or the presumption against retroactivity (at least when such rules are applied retroactively to pending removal proceedings). However, this is not one of those cases. Lara-Ruiz contested both the criminal charges and his removal. He articulates nothing that he did or refrained from doing in reliance on the availability of the waiver. The cases forbidding retroactive application of rules eliminating the

availability of a sec. 212(c) waiver require that the alien actually relied on the availability of the waiver. See, e.g., Morales-Ramirez, 209 F.3d at 982 (citation omitted). Thus, the reliance principle underlying the presumption against retroactive application is not implicated here. /9 We have previously upheld a similar distinction created under a previous version of the INA, which made deportable aliens ineligible to apply for a waiver of deportation, but which left excludable aliens convicted of the same aggravated felonies eligible to apply for sec. 212(c) waiver of exclusion. We ruled that such a distinction was rational because Congress may have wanted to give alien felons who are already in this country an extra incentive to leave on their own initiative and expense, by giving them the "opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings." LaGuerre, 164 F.3d at 1041.