Julio E. ROMAN, Petitioner,

v.

John ASHCROFT, et al.,[1] Respondents.

No. 1:01CV1236.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 4, 2002.

1. Among the named respondents is Kevin Rooney, Acting Commissioner of the I.N.S. Pursuant to Federal Rule of Civil Procedure 25(d)(1), James W. Ziglar, the new Commissioner, is substituted for Mr. Rooney.

Julio E. Roman, Oakdale, LA, pro se.

David W. Leopold, Law Office of David Wolfe Leopold, Cleveland, OH, for Petitioner.

Kathleen Lucille Midian, Office of the United States Attorney, Northern District of Ohio, Cleveland, OH, for Respondents.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This is a petition for a writ of habeas corpus. On September 6, 2001, this Court granted in part and denied in part the motion to dismiss for want of personal jurisdiction and denied the motion to dismiss for improper venue. The Court ordered the respondents to show cause, pursuant to 28 U.S.C. § 2243, why the writ should not be granted. For the foregoing reasons, the Court now grants the writ of habeas corpus.

## BACKGROUND

The petitioner, Julio Roman, is a national of the Dominican Republic. His status was adjusted to that of a lawful permanent resident on October 29, 1996. On September 30, 1999, he was convicted in this Court (per Dowd, J.) of violating 18 U.S.C. § 1546(a), relating to the making or use of counterfeit visas, and 42 U.S.C. § 408(a)(7)(C), relating to misuse of a social security number, pursuant to his guilty pleas.[2] He was sentenced, *inter alia*, to a fifteen-month term of imprisonment. On January 19, 2000, the office of the Immigration and Naturalization Service in Cleveland issued a notice to appear to Roman while he was serving his sentence. The notice charged that Roman was subject to removal from the United States on account of his criminal convictions. The Service filed an additional charge of deportability on June 21, 2000, which supple-

mented the allegations in the original notice to appear.

A hearing was held beginning on July 6, 2000, in Oakdale, Louisiana, before an immigration judge. Through his counsel, Roman admitted the allegations in the notice to appear and the supplemental allegations. The immigration judge found that Roman was subject to removal and that he was not eligible for cancellation of removal. The judge therefore ordered Roman removed to the Dominican Republic. On April 20, 2001, the Board of Immigration Appeals affirmed the immigration judge's decision per curiam. On July 11, 2001, the Board denied Roman's timely motion to reopen.

Roman filed the instant petition for habeas corpus on May 21, 2001. He named four respondents: the Attorney General, the Commissioner, and the District Directors of the Cleveland District and the New Orleans District of the I.N.S. On September 6, 2001, the Court granted in part and denied in part the government's motion to dismiss for want of personal jurisdiction and denied the government's motion to dismiss for improper venue. The Court ordered the government, pursuant to 28 U.S.C. § 2243, to show cause why the writ should not be granted.

## DISCUSSION

### A. INA § 212(h) IS UNCONSTITUTIONAL

A non-legal permanent resident (non-LPR) is inadmissible to the United States if he or she has been convicted of an aggravated felony. 8 U.S.C. § 1101(a)(43). However, a non-LPR convicted of an aggravated felony may seek an adjustment of status,[3] and thus remain in the country, by

---

**2.** Pursuant to 8 U.S.C. § 1101(a)(43), the aforementioned convictions are construed to be aggravated felonies.

**3.** An adjustment of status "is merely a procedural mechanism by which an alien is assimilated to the position of one seeking to enter

receiving a § 212(h) discretionary waiver. *Id.* § 1182(h). Section 212(h)(1)(B) of the Immigration and Nationality Act (INA) provides that:

in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawful resident spouse, parent, son, or daughter of such alien.

*Id.* § 1182(h)(1)(B).

■ The same is not true of a legal permanent resident (LPR). INA § 212(h)(2) provides that "no waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if ... since the date of such admission the alien has been convicted of an aggravated felony ...." *Id.* § 1182(h). This revision of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) clearly bars discretionary cancellations of deportation to LPRs convicted of aggravated felonies while permitting these discretionary waivers for illegal aliens convicted of the same underlying offenses. *Matter of Michel,* 21 I. & N. Dec. 1101 (B.I.A.1998) ("Section 212(h) of the Act, while specifically precluding waiver eligi-bility for a lawful permanent resident who has been convicted of an aggravated felony, imposes no such restriction on one who has not ben admitted previously as a lawful permanent resident."); *Matter of Yeung,* Interim Decision 3297 (B.I.A.1996); Rex B. Wingerter, *Defenses to Removal Based on Criminal Convictions: INA Waivers,* 01–06 Immigr. Briefings 1 (2001). Mr. Roman argues[4] that this distinction between similarly-situated LPRs and non-LPRs in § 212(h) violates the equal protection clause of the United States Constitution.

■ Congress's plenary power in the area of immigration and naturalization requires this Court to give special deference to its decision to expel or exclude individuals from this country. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). As Justice Powell explained in *Fiallo,*

decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary, and the reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the

---

the United States." *Matter of Rainford,* 20 I. & N. Dec. 598, 601 (B.I.A.1992).

4. As a preliminary matter, the Court finds that Roman has standing to bring the present equal protection challenge. *Skelly v. INS,* 168 F.3d 88, 91 (2d Cir.1999). Although the government is correct in noting that Roman did not bring this challenge in his previous administrative appeals, neither the immigration judge nor the Board of Immigration Appeals had the authority to adjudicate constitutional challenges to the INA or grant the relief presently sought by Roman. *Arango–Aradondo v. INS,* 13 F.3d 610, 614 (2d Cir.1994). As such, there are no remedies that Roman might have exhausted before reaching this Court.

In addition, the Court finds that Roman was convicted of a crime of "moral turpitude," *Matter of Adetiba,* 20 I. & N. Dec. 506 (B.I.A.1992), and, as such, would be eligible for a § 212(h) discretionary waiver but for his lawful immigration status.

President in the area of immigration and naturalization.

*Id.* at 796, 97 S.Ct. 1473 (citing *Mathews v. Diaz,* 426 U.S. 67, 81–82, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). Indeed, in the area of immigration and naturalization, "a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Sad v. INS,* 246 F.3d 811, 821 (6th Cir.2001) (quoting *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)).

■ Although Roman is entitled to equal protection under the Fifth Amendment, such congressional distinctions among aliens are subject only to rational basis review. *Fiallo,* 430 U.S. at 792, 97 S.Ct. 1473; *Sad,* 246 F.3d at 821 (citing *Heller,* 509 U.S. at 320, 113 S.Ct. 2637). Thus, a statutory "classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller,* 509 U.S. at 320, 113 S.Ct. 2637.

■ Despite this deferential standard of review, Roman argues that there is no rational basis for such a disparity of treatment between similarly-situated LPRs and non-LPRs,[5] and that INA § 212(h) is therefore unconstitutional and must be struck down. He asserts that "[t]he distinction not only has no rational basis, it is absurd." The Court agrees.

■ "Rational basis review does not require us to identify the legislature's actual rationale for the distinction; rather, we will uphold the statute if 'there are plausible reasons for Congress' action.'" *Hamama v. INS,* 78 F.3d 233, 237 (6th Cir.1996) (quoting *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980)); *Newton v. INS,* 736 F.2d 336, 342 (6th Cir.1984) ("[I]t is not necessary for Congress to have drawn the line at the (purportedly) most reasonable point … but only that it had a rational purpose in drawing the line(s) as it did."). In conjuring up reasons to justify this distinction, "[t]he government need only articulate a rational reason for making the distinction, and need not provide any evidence to support the rationality of the reason." *Domond v. INS,* 244 F.3d 81, 87 (2d Cir.2001) (citation omitted).

The government attempts to meet this meager burden merely by relying on the three overlapping reasons accepted by the Seventh Circuit as plausible reasons for Congress's distinction between LPRs and non-LPRs in § 212(h).[6] In examining the reasons advanced by the government, and reviewing the Seventh Circuit's decision in *Lara–Ruiz v. INS,* 241 F.3d 934 (7th Cir. 2001),[7] the Court would be remiss in find-

---

5. The government contends that LPRs and non-LPRs are not similarly situated, and thus, "there can be no equal-protection violation just because the two groups of aliens are treated differently." The Court disagrees. After examining the § 212(h) discretionary waiver, the Court finds that an LPR deportee and a non-LPR excludee are similarly situated for the purposes of equal protection analysis "when the ground for the deportee's removal from the country is the same as the ground for the excludee's denial of admission." *Cato v. INS,* 84 F.3d 597, 599 (2d Cir.1996). Although the government lists several instances in which Congress has accorded different treatment to LPRs and non-LPRs, these instances have no relevance on whether LPRs and non-LPRs are similarly situated for purposes of the present legislative distinction.

6. The Sixth Circuit has never before reviewed the constitutionality of § 212(h), and the Court reviews the issue as a case of first impression.

7. The government has amended its response, additionally adopting the Ninth Circuits iden-

ing a single reason purportedly justifying this distinction to be rational. First, the government claims that "the amendment to INA § 212(h) fulfilled Congress' overall purpose in IIRIRA to streamline the removal process and expedite the removal of criminal aliens." It is undisputed that streamlining the alien removal process is a legitimate government purpose. However, it is not enough that the law further a legitimate purpose; the Constitution requires that law must also be rationally related to the achievement of that purpose. The government fails to address this second prong adequately,[8] and the Court cannot find any rational link between the asserted goal of streamlining the removal process and Congress's actions in denying discretionary waivers only to LPRs. In fact, the Court finds Congress' distinction completely devoid of reason, creating "a distinction which rewards those necessarily guilty of at least two crimes, illegal entry and the 'aggravated felony,' by treating them better than individuals guilty only of the same 'aggravated felony.'" *Song v. INS*, 82 F.Supp.2d 1121, 1133 (C.D.Cal.2000). This Court finds absolutely no rational relationship between the government's purported purpose and the steps taken to achieve that purpose.

Second, the government, quoting the Seventh Circuit, alleges that even if § 212(h) does not streamline the removal process, it is nevertheless "a rational first step toward" the expeditious removal of all criminal aliens. *Lara–Ruiz*, 241 F.3d at 947. This Court disagrees. If this is, in fact, Congress's first step toward the achievement of that goal, it is most certainly a step backward. In an attempt to remove aliens convicted of aggravated felonies,

> Congress would have enacted a rational first step if it had chosen to preclude only LPRs and non-LPRs who committed certain felonies, but allowed felons who committed other, perhaps less serious crimes to remain eligible for discretionary relief. This would bear a rational relationship to an initial goal of removing the worst criminal aliens from the country in furtherance of a latter goal of expediting the removal of all criminal aliens.

*Jankowski*, 138 F.Supp.2d at 281. But this is not what Congress did. Congress chose to punish LPRs guilty of an aggravated felony far worse than illegal aliens guilty of the same aggravated felony. The Court cannot make any sense of this purported "first step," let alone find it the product of rational decision-making.

Third, the government advances that "it would be rational for Congress to 'have concluded that LPRs who commit serious crimes despite [their legal status] are uniquely poor candidates for relief from removal through the "backdoor" of waiver of inadmissibility'" (quoting *Lara–Ruiz*, 241 F.3d at 947). The government, placing an undue strain on its credibility, apparently wishes this Court to believe that

---

tical reasoning in support of its position. *Finau v. INS*, 270 F.3d 859 (9th Cir.2001).

**8.** The government does theorize that "[b]y eliminating § 212(h) waivers for LPR aggravated felons, Congress merely closed a troublesome loophole that was allowing these aliens to circumvent bars to waivers of deportation under former INA § 212(c)." The Court finds this line of reasoning unpersuasive. Because this loophole was available

both to LPRs and non-LPRs prior to the IIRIRA amendment, the elimination of § 212(h) waivers only to LPRs "merely puts the issue back where it started: determination of whether there is a rational basis for closing off this avenue of discretionary relief to LPR aggravated felons but not to otherwise identically situated non-LPR aggravated felons." *Jankowski v. INS*, 138 F.Supp.2d 269, 281 (D.Conn.2001).

Congress may have decided to take the unprecedented step of giving preference to illegal aliens over those lawfully living in this country. The Court finds it difficult to take this argument seriously. Mr. Roman is correct in noting that Congress, in putting forth such an irreconcilable distinction, has created "an incentive on being an illegal alien and punishe[d] LPRs who have abided by the immigration laws and developed closer ties with the United States." As the district court in *Jankowski* properly noted:

> Th[e] putative basis for disparity of treatment in 8 U.S.C. § 1182(h) is also not rational because Congress has so long favored LPRs, who are legally living in the United States, over non-LPRs, including illegal aliens and aliens who have overstayed their visas ... Congress and the courts have *never* before given illegal aliens a second chance in preference to aliens who were lawfully living in this country.... The distinction created by IIRIRA amendment to 8 U.S.C. § 1182(h), is the anomaly in the treatment by Congress of non-LPRs visa-a-vis LPRs.

*Jankowski*, 138 F.Supp.2d at 282 (emphasis added). It is flatly irrational for Congress to punish those who adhere to this country's immigration laws while offering rewards to those who lack any regard for the legal channels across our borders. While the reverse may find a rational basis,[9] the Court finds it irrational for Congress to treat illegal aliens better than those lawfully living in this country. Congress has never before acted with such a twisted sense of justice, and this Court declines to put a stamp of rationality on it now.

In failing to advance a rational basis for § 212(h), the government has failed to meet even its meager burden. The Court cannot fathom any political or foreign policy reasons—rational or irrational—that might explain why discretionary relief under INA § 212(h) would be permissible for illegal aliens but not for LPRs who have been convicted of the same aggravated felony.

This Court is not merely questioning the reasoning of Congress's distinction; this Court is finding this distinction completely devoid of any reason whatsoever. While the Court must give deference to Congress in these matters, that deference is not without limits. Whether intended or not,[10] Congress has propounded an irrational distinction. Even according deference to the Congress in this plenary field of immigration, Roman has sufficiently negated every conceivable basis which might support the distinction made in § 212(h). Thus, INA § 212(h) fails to meet even the minimum standards of rational basis scrutiny, and, as such, it must be struck down as unconstitutional.

## B. PETITIONER'S DENIAL OF DUE PROCESS WAS HARMLESS ERROR

 An alien is denied due process where he or she is deprived of a meaningful opportunity to be heard at his or her deportation hearing.[11] *Campos–Sanchez v.*

---

9. *Newton v. INS*, 736 F.2d 336, 340 (6th Cir. 1984) (finding that the exclusion of exchange visitors from eligibility for suspension of deportation did not rest on "irrelevant and fortuitous factors"); *Castillo–Felix v. INS*, 601 F.2d 459 (9th Cir.1979).

10. There is no evidence that Congress was aware of this distinction at the time it passed the IIRIRA.

11. It is well settled that an alien is entitled to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (citing *The*

*INS,* 164 F.3d 448, 450 (9th Cir.1999); *Podio v. INS,* 153 F.3d 506, 509–10 (7th Cir.1998). Mr. Roman claims that he was deprived of procedural due process at his removal hearing because the immigration judge did not permit him to testify as to facts that, he argues, would have established that he made or used counterfeit immigration documents only to benefit his immediate family, and thus would have established that his crime was not an aggravated felony under I.N.A. § 101(a)(43)(P).[12] Although the Court finds that Roman was denied an opportunity to be heard at his deportation hearing, the Court holds this denial to be harmless error.[13] *Kuciemba v. INS,* 92 F.3d 496, 501 (7th Cir.1996) (internal quotation marks and citations omitted) (finding that a petitioner must produce "concrete evidence" indicating that the due process violation "had the potential for affecting" the

outcome of the hearing); *United States v. Gonzalez–Mendoza,* 985 F.2d 1014, 1017 (9th Cir.1993).

Mr. Roman's argument that all counterfeit items were to be used solely within his immediate family clearly lacks merit. In pleading guilty to the underlying aggravated felony, Roman admitted that he received nine sets of matching Social Security cards and Puerto Rican birth certificates in the mail from Puerto Rico, possessed an additional twenty-one Puerto Rican birth certificates and twenty-two Social Security cards, and that he intended to sell these fifty-four counterfeit items. The Immigration Judge stated specifically that he would consider "something documentary or otherwise" to establish that Roman fell under 8 U.S.C. § 1101(a)(43)(P), but that he would not consider Roman's testimony alone.[14] Al-

*Japanese Immigrant Case,* 189 U.S. 86, 100–01, 23 S.Ct. 611, 47 L.Ed. 721 (1903)).

12. The law recognizes an exception to the classification of "aggravated felon" if the alien can show that he or she committed document fraud, violating 18 U.S.C. § 1543, solely for the purpose of assisting, abetting, or aiding only his spouse, child, or parent. 8 U.S.C. § 1101(a)(43)(P).

13. The government argues that this Court lacks subject matter jurisdiction over the present issue. It claims that a habeas proceeding is not the proper venue for bringing a due process challenge, but rather that such appeals should be brought before the circuit court of appeals. The Court disagrees. This Court holds that while the circuit court might also have had jurisdiction over reviewing a decision of the BIA, habeas review of a deportation order is available "if a due process violation frustrated a deportee's right of direct appeal." *Chmakov v. Blackman,* 266 F.3d 210, 215 (3d Cir.2001) (quoting *Foroglou v. Reno,* 241 F.3d 111, 113 (1st Cir.2001)). Such is the issue before this Court.

14. In considering Roman's deportation, the immigration judge permitted his trial counsel,

Mr. John Garan, to present evidence affirmatively establishing that Roman met the requirements of § 101(a)(43)(P):

> IJ: Well, it also, the only exception is if it was to aid, assist or abet a spouse, parent or child of the alien and that has to be affirmatively shown by the respondent [Mr. Roman]. Is the respondent making that claim?
>
> Garan: Yes, Your Honor, he makes that claim.
>
> IJ: Well, he can make the claim. Can you affirmatively establish that the nine persons that he assisted with these fraudulent birth certificates and Social Security Cards, were his spouse, parent or child, well, since it was nine of them, I would not imagine he'd have nine wives, but, Mr. Garan, if you can have something that would affirmatively show that he only assisted a spouse, parent, or child and no other person, I would certainly be happy to see that.
>
> Garan: I do not have that in my possession, Your Honor.
>
> IJ: Do you believe you could get that in your possession.
>
> Garan: If the Court would grant me additional time, I, I[sic] believe I could.

though this action denied Roman a meaningful opportunity to be heard, this Court finds that Roman's testimony alone would not have been nearly sufficient to rebut the overwhelming evidence showing Mr. Roman had not possessed the fifty-four counterfeit items for the purpose of assisting, abetting, or aiding only his spouse, child, or parent.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is granted. The Court orders that this case be remanded to the Board of Immigration Appeals to allow Roman to pursue his claim for a discretionary waiver of removal on the basis of extreme family hardship pursuant to INA § 212(h). The Court orders the government to stay the execution of Roman's deportation during the pendency of this case.

This order is final and appealable.

IT IS SO ORDERED.

The immigration judge granted Mr. Garan a two week continuance in which to obtain documentary evidence. Upon the continuation of the hearing, Mr. Garan requested another continuance, which the immigration judge denied. When Mr. Garan then requested that Mr. Roman testify in place of the documentary evidence, the immigration judge refused to allow the testimony of Mr. Roman alone:

IJ: Mr. Garan, I'm not going to take [Mr. Roman's] testimony as evidence that these people were not, that they were only his relatives. If you come up with something documentary or otherwise to establish it, I will consider it. As you have not presented any thing to date, I am going to find the respondent deportable as charged.

Removal Hearing in A71–983–001.