RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0204P (6th Cir.)
File Name: 04a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARCO GARCIA-
ECHAVERRIA,
    *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,
    *Respondent-Appellee.*

No. 03-3285

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 02-07228—John W. Potter, District Judge.

Submitted: April 23, 2004

Decided and Filed: July 1, 2004

Before: MERRITT and MOORE, Circuit Judges;
DUGGAN, District Judge.[*]

_____

  [*] The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

## COUNSEL

**ON BRIEF:** Lawrence J. Kiroff, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee. Marco A. Garcia-Echaverria, El Paso, Texas, pro se.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Marco Garcia-Echaverria ("Garcia-Echaverria"), pro se Petitioner-Appellant, appeals the district court's denial of his petition for habeas corpus relief. Garcia-Echaverria was sentenced for a conviction of unlawful reentry, in violation of 8 U.S.C. § 1326(b), and the Immigration and Naturalization Service ("INS," now the Department of Homeland Security "DHS,") has reinstated the prior Final Order of Removal. On appeal, Garcia-Echaverria argues that his initial removal was unlawful, and therefore that his current detention is unconstitutional. Garcia-Echaverria contends that his initial removal was unlawful because the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") erred by concluding that Garcia-Echaverria's Kentucky drug conviction constitutes an "aggravated felony," making him ineligible for relief from deportation/removal.[1] Garcia-Echaverria also argues that his initial removal was unlawful

_____

  [1] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") adopted "the term 'removal,' which essentially eliminated a distinction that formerly existed between 'deportation' proceedings and 'exclusion proceedings.' Thus, a determination whether an alien is 'inadmissible' (i.e., cannot, or did not, enter the country lawfully), or 'deportable' (i.e., entered the country lawfully but is no longer entitled to stay), would be determined through 'removal' proceedings." *Balogun v. U. S. Att'y Gen.*, 304 F.3d 1303, 1306-07 (11th Cir. 2002) (citations omitted).

because (1) the line that 8 U.S.C. § 1182(h) draws between illegal aliens ("non-LPRs") and lawful permanent residents ("LPRs") violates the Equal Protection Clause of the Fifth Amendment; and (2) application of the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which make Garcia-Echaverria ineligible for relief from deportation/removal, raises retroactivity concerns.[2]

For the following reasons, we **AFFIRM** the district court's decision denying Garcia-Echaverria's petition for habeas corpus relief.

## I. BACKGROUND

Garcia-Echaverria, a native and citizen of Mexico, entered the United States on or about January 1, 1980, and became a lawful permanent resident on or about January 26, 1990.[3] On January 6, 1997, Garcia-Echaverria was convicted by the State of Kentucky pursuant to a guilty plea, entered on

---

[2]In his appeal of the district court's denial of his habeas petition, Garcia-Echaverria also argues that his initial removal was unlawful because the INS removed him while his Kentucky drug conviction was on direct appeal, while his appeal of the BIA's order of removal and his motion for a stay of removal were pending before the United States Court of Appeals for the Fifth Circuit, after the United States District Court for the Southern District of New York ("S.D.N.Y.") had transferred his habeas petition to the United States District Court for the Western District of Louisiana, and after the S.D.N.Y. had issued a stay of removal. These issues are discussed fully in *United States v. Garcia-Echaverria*, 03-3655, Garcia-Echaverria's direct appeal of his conviction for unlawful reentry.

[3]In this opinion, we recount only the facts relevant to the issues we are addressing solely in Garcia-Echaverria's appeal of the district court's denial of his habeas petition. Our opinion in *United States v. Garcia-Echaverria*, 03-3655, includes a more complete statement of facts, including those bearing on issues that Garcia-Echaverria raised in both his direct appeal of his conviction for unlawful reentry and his appeal of the denial of his habeas petition.

December 16, 1996, to the charge of "Trafficking Marijuana over 8 ounces, less than 5 pounds," in violation of K.R.S. 218A.1421(3). Joint Appendix ("J.A.") at 141-42. On January 10, 1997, the Kentucky Circuit Court sentenced Garcia-Echaverria to five years of imprisonment for his Kentucky drug conviction.

On May 13, 1997, the INS issued Garcia-Echaverria a Notice to Appear, charging that he was removable due to his Kentucky drug conviction under two sections of the Immigration and Nationality Act ("INA") — § 237(a)(2)(A)(iii) (codified as 8 U.S.C. § 1227(a)(2)(A)(iii)) for being convicted of an "aggravated felony" and § 237(a)(2)(B)(i) (codified as 8 U.S.C. § 1227(a)(2)(B)(i)) for being convicted of a controlled substance offense. On September 7, 1999, an IJ ordered Garcia-Echaverria removed from the United States. On July 20, 2000, the BIA dismissed Garcia-Echaverria's appeal, finding that a waiver of inadmissibility pursuant to § 212(c) of the INA (originally codified as 8 U.S.C. § 1182(c), but *repealed by* the IIRIRA, 104 Pub. L. No. 104-208, § 304(b), 110 Stat. 3009 (1996)), was not available to him, and that he was statutorily ineligible for cancellation of removal pursuant to § 240A(a) of the INA (codified at 8 U.S.C. § 1229b).

Garcia-Echaverria was found in the United States on August 31, 2001, when he was stopped for speeding by officers of the Ohio Highway Patrol at Fremont, Ohio. On October 3, 2001, a grand jury returned a one-count indictment, charging Garcia-Echaverria with being an alien found in the United States on or about August 31, 2001, after having been deported for committing an "aggravated felony" and without obtaining permission to reenter from the Attorney General, in violation of 8 U.S.C. § 1326(b). After his motions to dismiss the indictment were denied, Garcia-Echaverria pleaded guilty on September 10, 2002, to the charge of unlawful reentry, and the district court sentenced him to thirty-seven months of imprisonment. Prior to pleading guilty, Garcia-Echaverria filed on May 3, 2002, in the

Northern District of Ohio, a petition for a writ of habeas corpus challenging his current detention. On December 30, 2002, the district court denied Garcia-Echaverria's petition for habeas corpus. Garcia-Echaverria filed a timely notice of appeal.

## II. JURISDICTION

The district court had jurisdiction over Garcia-Echaverria's habeas petition pursuant to 28 U.S.C. § 2241. Garcia-Echaverria filed both a direct appeal of his conviction for unlawful reentry and a habeas petition challenging his current detention. Typically, a federal prisoner may file a § 2241 petition contesting the legality of his detention only if his claim is such that he cannot obtain effective relief on direct appeal or through a § 2255 motion. *Paulino v. United States*, 352 F.3d 1056, 1060-61 (6th Cir. 2003); *Bannerman v. Snyder*, 325 F.3d 722, 723 (6th Cir. 2003). While an alien may file a § 2241 petition challenging his removal proceedings, an alien is not "in custody" for removal purposes if he is detained pursuant to a sentence for a criminal conviction, even if the INS has filed a detainer order with the prison where the petitioner is incarcerated. *Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 540-41 (5th Cir. 2003) (collecting cases); *Prieto v. Gluch*, 913 F.2d 1159, 1163-64 (6th Cir. 1990), *cert. denied*, 498 U.S. 1092 (1991). In this case, however, at the time Garcia-Echaverria filed his § 2241 petition, the INS had already reinstated Garcia-Echaverria's prior Final Order of Removal. The IIRIRA requires the INS to take custody of and commence procedures to execute the removal of an alien who is subject to a final order of removal based upon a conviction for an "aggravated felony." *Simmonds v. INS*, 326 F.3d 351, 356 (2d Cir. 2003); *see also Mustata v. U.S. Dep't of Justice*, 179 F.3d 1017, 1022 n.4 (6th Cir. 1999). This requirement was strong evidence of the DHS's intention to take custody of Garcia-Echaverria immediately following the conclusion of his sentence, and thus satisfies the custody requirement for a § 2241 petition. Because Garcia-Echaverria was in INS custody at the time he

filed his habeas petition challenging the constitutionality of his confinement, the district court had jurisdiction pursuant to 28 U.S.C. § 2241.[4]

This court has jurisdiction over the appeal pursuant to 28 U.S.C. §§ 1291 and 2253. Subsequent to this case being submitted on the briefs, Garcia-Echaverria completed his sentence for his § 1326(b) conviction, and Garcia-Echaverria is currently being detained by the DHS pending his removal. Garcia-Echaverria's completion of his criminal sentence neither deprives us of jurisdiction over this appeal nor moots the claims asserted in the habeas petition that we are reviewing in this appeal. *Rosales-Garcia v. Holland*, 322 F.3d 386, 394-96, 395 n.6 (6th Cir.) (en banc), *cert. denied*, 539 U.S. 941 (2003). We review de novo questions of statutory interpretation raised in a § 2241 petition. *Mustata*, 179 F.3d at 1019.

## III. ANALYSIS

Garcia-Echaverria argues that the BIA erred by concluding that his Kentucky drug conviction was an "aggravated felony," making him both deportable and ineligible for relief from deportation/removal. Although Garcia-Echaverria concedes that his drug conviction is a felony under Kentucky law, he argues that it does not constitute an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(B) because the offense to which he pleaded guilty did not contain a trading or dealing element nor would it have been punishable as a felony under federal law.

The BIA correctly determined that Garcia-Echaverria's Kentucky drug conviction constitutes an "aggravated felony"

---

[4]Because Garcia-Echaverria was convicted of unlawful reentry, he had the opportunity in his direct appeal to attack collaterally the legality of his prior deportation. We conclude, however, that the district court's jurisdiction over a § 2241 petition should not turn upon the particular crime of which the petitioner has been convicted.

within the meaning of the INA. The term "aggravated felony" is defined through a list of qualifying offenses, which includes: "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). In § 924(c), "the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)," or one of two other federal acts not relevant here. 18 U.S.C. § 924(c)(2).

There is some conflict regarding what elements must be present in order for a state offense to constitute a drug-trafficking crime within the meaning of 8 U.S.C. § 1101(a)(43)(B). United States Sentencing Guideline ("U.S.S.G.") § 2L1.2 requires a sentencing enhancement to be imposed for the crime of unlawful reentry, if the alien was deported after having committed a drug-trafficking crime. Several circuits have held that in the sentencing context, the phrase "drug trafficking crime" includes offenses that would be punishable under the Controlled Substances Act (or two other federal acts not relevant here), so long as the offense is punishable as a felony under either state or federal law. *Gerbier v. Holmes*, 280 F.3d 297, 299 (3d Cir. 2002). Under this interpretation, a drug offense that is punishable as a felony under state law could be considered an "aggravated felony," for purposes of applying the enhancement contained in U.S.S.G. § 2L1.2, even if the conduct would have only been punishable as a misdemeanor under federal law. *Id.*

The Third Circuit has defined 8 U.S.C. § 1101(a)(43)(B) differently for deportation purposes. *Id.* According to the Third Circuit,

The BIA has interpreted § 924(c)(2) to require that, for deportation purposes, a state drug conviction, whether it be a felony or a misdemeanor, must either contain a "trafficking" component *or be punishable as a felony under federal law* in order for it to constitute an

'aggravated felony.' In contrast, several Courts of Appeals have interpreted the same language in § 924(c)(2), albeit in the Sentencing Guidelines context, to require that the state drug conviction need only be a felony under state law and that the state crime be punishable under the federal Controlled Substances Act, *either as a felony or a misdemeanor*.

*Gerbier*, 280 F.3d at 299 (emphases in original). The Third Circuit has held that for deportation purposes, the BIA's interpretation of § 924(c)(2) is correct. *Id.*

Under the BIA's approach, a state drug conviction constitutes an "aggravated felony" under either of two routes. Under the first route, a felony state drug conviction is an "aggravated felony" under § 924(c)(2) if it contains a trafficking element. Under the second route, a state drug conviction, either a felony or a misdemeanor, is an "aggravated felony" if it would be punishable as a felony under the Controlled Substances Act.

*Id.*

We have not taken a position, in either the Sentencing Guidelines context or the removal context, regarding what elements must be present in order for a state crime to constitute a drug-trafficking crime within the meaning of 8 U.S.C. § 1101(a)(43)(B), although we have held that at a minimum, a state conviction resulting from the sale of drugs for money qualifies. *Nakhleh v. INS*, 38 F.3d 829, 831 (6th Cir. 1994). It is clear, however, that the BIA's approach is more favorable towards aliens. Because we do not think that Garcia-Echaverria can succeed under even the BIA's more favorable approach, we will assume for the limited purpose of this appeal that the BIA's approach applies.

Garcia-Echaverria's conviction may not constitute an "aggravated felony" under the "trafficking" route. Garcia-

Echaverria pleaded guilty to K.R.S. 218A.1421(3), which provides:

Trafficking in eight (8) or more ounces but less than five (5) pounds of marijuana is:
(a)  For a first offense a Class D felony.
(b)  For a second or subsequent a Class C felony.

For purposes of K.R.S. 218A.1421, the term "traffic" "means to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance." K.R.S. 218A.010(28). It is undisputed that Garcia-Echaverria's conviction was a felony under Kentucky law, but the parties disagree over whether the offense contained a trafficking element. According to the Third Circuit, trafficking requires "unlawful trading or dealing of a controlled substance." *Gerbier*, 280 F.3d at 305. Garcia-Echaverria could have been convicted of violating K.R.S. 218A.1421(3) for possession with intent to sell. Indeed, Garcia-Echaverria's indictment charges him with "knowingly and unlawfully traffick[ing] in marijuana by one pound of marijuana in his possession for purpose of resale." J.A. at 48. It is not clear whether possession with intent to resell constitutes "unlawful trading or dealing," and thus trafficking under this route. *See Gerbier*, 280 F.3d at 313 (suggesting that "possession with intent to distribute" may constitute trading or dealing ). *But see Wilson v. Ashcroft*, 350 F.3d 377, 382 (3d Cir. 2003) (remanding to the district court for consideration in the first instance of the question whether a conviction for possession with intent to distribute marijuana contains a trading and dealing element).

Garcia-Echaverria's conviction, however, constitutes an "aggravated felony" under the "hypothetical federal felony" route, making him both removable and ineligible for relief from removal. Although Garcia-Echaverria asserts that the proper federal analogue for his Kentucky drug conviction is 21 U.S.C. § 844, an examination of the applicable statutes

indicates that the proper analogue is actually 21 U.S.C. § 841(b). Section 844(a) provides:

It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice. . . . Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both . . . .

Section 841(a)(1) makes it unlawful to knowingly or intentionally, "manufacture, distribute, or dispense, or *possess with intent to manufacture, distribute, or dispense*, a controlled substance."   (emphasis added).   Section 841(b)(1)(D), the applicable penalty provision, further provides:

In the case of less than 50 kilograms of marihuana . . . such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual . . . .

To be convicted pursuant to KRS 218A.1421(3), Garcia-Echaverria must have, at a minimum, possessed with an intent to distribute, etc. between eight ounces and five pounds of marijuana.   Therefore, Garcia-Echaverria was punishable pursuant to 21 U.S.C. § 841(b)(1)(D), which carries a maximum punishment of five years, and thus constitutes a felony pursuant to 18 U.S.C. § 3559, which provides that a federal offense is a felony if its maximum penalty is greater than one year.

It is true that § 841(b)(4) provides:

Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by *distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title* and section 3607 of Title 18.

(emphasis added). Garcia-Echaverria did not assert in his appellate brief that he falls within this escape-hatch provision. Moreover, we conclude that his Kentucky drug conviction, which involved at least eight ounces of marijuana, does not fall within this provision,[5] and thus the proper federal analogue for Garcia-Echaverria's Kentucky drug conviction is § 841(b)(1)(D). Therefore, Garcia-Echaverria's Kentucky drug conviction constitutes an "aggravated felony" under this route.[6]

Next, Garcia-Echaverria argues that denying him relief from deportation/removal pursuant to 8 U.S.C. § 1182(h) violated his rights under the Equal Protection Clause of the Fifth Amendment. Although Garcia-Echaverria concedes that statutes that draw distinctions between different classes of aliens are subjected only to rational review, he argues that the distinction that 8 U.S.C. § 1182(h) draws between LPRs and non-LPRs is not rationally related to any legitimate government interest.

---

[5]We have no binding precedent defining "small amount" within the meaning of § 841(b)(4). Garcia-Echaverria, however, possessed at least eight ounces, which is not a "small amount." The escape-hatch provision is designed to address the casual sharing of marijuana; behavior that is akin to mere possession rather than distribution. Although distribution of eight ounces of marijuana may be a small-scale drug transaction, distribution of eight ounces is more than casual sharing.

[6]*But see Wilson v. Ashcroft*, 350 F.3d 377, 382 (3d Cir. 2003) (holding that pursuant to § 841(b)(4), the proper federal analogue for a state conviction for possession with intent to distribute more than one ounce but less than five pounds of marijuana was 21 U.S.C. § 844 because the state offense failed to include remuneration as an element).

---

It is true that 8 U.S.C. § 1182(h) treats differently LPRs and non-LPRs, in that it allows the Attorney General to grant an adjustment of status to some non-LPRs who have been convicted of an "aggravated felony," but prohibits the Attorney General from granting relief to LPRs who have been convicted of an "aggravated felony." While a district court in our circuit has held that this distinction violates equal protection, *Roman v. Ashcroft*, 181 F. Supp. 2d 808, 812-14 (N.D. Ohio 2002), *vacated on other grounds*, 340 F.3d 314 (6th Cir. 2003), several other circuits have held that this distinction survives the applicable rational-review standard. *Dipeppe v. Quarantillo*, 337 F.3d 326, 331-32 (3d Cir. 2003); *Lukowski v. INS*, 279 F.3d 644, 647 (8th Cir. 2002); *Lara-Ruiz v. INS*, 241 F.3d 934, 946-48 (7th Cir. 2001); *Moore v. Ashcroft*, 251 F.3d 919, 924-26 (11th Cir. 2001).

We have not yet ruled on this issue, and we may not do so in this case because Garcia-Echaverria does not have standing raise this challenge. Section 1182(h) allows the Attorney General to grant an adjustment of status to some non-LPRs who have been convicted of certain crimes, including a violation of a law relating to a controlled substance, but only "insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana." *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II) and (h). In 1996, § 348 of the IIRIRA amended 8 U.S.C. § 1182(a) to prohibit the Attorney General from granting a similar waiver to LPRs.[7] Garcia-Echaverria

---

[7]Section 348(a) of the IIRIRA provides: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States. No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection." IIRIRA, Pub. L. No. 104-208, § 348(a), 110 Stat. 3009 (1996). This limitation became effective immediately upon the enactment of the IIRIRA in September 1996. *See id*. at § 348(b).

was convicted of possession *with intent to distribute* at least eight ounces of marijuana; therefore, he would not have been eligible for an adjustment of status, even if he were a non-LPR, and regardless of the limitation imposed by § 348 of the IIRIRA. Because Garcia-Echaverria would not have been eligible for an adjustment of status even if he were a non-LPR, he lacks standing to raise this challenge.

Garcia-Echaverria also argues that denying him the opportunity to apply for a waiver of deportation pursuant to § 212(c) of the INA had an impermissible retroactive effect because he committed his Kentucky drug offense prior to the repeal of that provision by the IIRIRA.

It is true that *INS v. St. Cyr*, 533 U.S. 289, 321-22 (2001), held that denying some aliens the opportunity to apply for a waiver of deportation pursuant to § 212(c) of the INA has an impermissible retroactive effect. *St. Cyr* held that denying the opportunity to apply for § 212(c) relief to aliens who had pleaded guilty in reliance upon the opportunity to apply for such relief would disrupt the quid pro quo of plea bargaining. *Id*. at 321-24. By the time Garcia-Echaverria committed his Kentucky drug offense on May 31, 1996,[8] and certainly by the time he pleaded guilty on December 16, 1996, § 440(d)

---

At the time Garcia-Echaverria committed his offense conduct on May 31, 1996, and when he pleaded guilty of December 16, 1996, the Attorney General was prohibited from granting a waiver to aliens who had been convicted of a controlled substance offense, except for simple possession of less than thirty grams of marijuana. 8 U.S.C. § 1182(h)(1995).

Although it does not appear that Garcia-Echaverria has raised a retroactivity argument regarding § 348 of the IIRIRA, any such argument would be without merit due to the fact that he was ineligible for such relief prior to the enactment of the IIRIRA.

[8]We note that the Supreme Court's retroactivity analysis in *St. Cyr*, 533 U.S. 289, 320-23 (2001), turned upon the timing of the defendant's plea in relation to the repeal of § 212(c) relief, not upon the timing of the defendant's criminal conduct in relation to the repeal of § 212(c).

---

of the AEDPA[9] made him ineligible for a discretionary waiver of deportation. AEDPA, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214 (1996); 8 U.S.C. § 1227(a)(2)(A)(iii) and (B). *St. Cyr* aids only those aliens whose "convictions

---

[9]Prior to the enactment of the AEDPA, § 212(c) of the INA (codified at 8 U.S.C. § 1182(c)(1995)) allowed the Attorney General to exercise his discretion and waive the deportation of a lawful permanent resident alien, meeting certain requirements, who was excludable by reason of having committed an "aggravated felony," except the Attorney General had no discretion to admit:

an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c)(1995); *St. Cyr*, 533 U.S. at 294-95 (explaining that although § 212(c) on its face only applies to exclusion proceedings, it had been interpreted as allowing lawful permanent residents to seek a waiver of deportation). At that time, the term "aggravated felony" included, "illicit trafficking in a controlled substance (as defined in section 102 of the Controlled Substances Act [21 USCS § 802]), including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." 8 U.S.C. § 1101(a)(43)(B)(1995). An alien convicted of illicit trafficking of a controlled substance, however, would have remained eligible for discretionary waiver of deportation if he had served less than five years of imprisonment. 8 U.S.C. § 1182(c)(1995).

Section 440(d) of the AEDPA narrowed the Attorney General's discretion, prohibiting the Attorney General from waiving the deportation of a lawful permanent resident, who was excludable by reasons of having committed "any criminal offense covered in section 241(a)(2)(A)(iii) ["aggravated felony"], (B) [controlled substance conviction]," etc., regardless of whether he had served five years of imprisonment. AEDPA, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214 (1996); 8 U.S.C. § 1227(a)(2)(A)(iii) and (B).

Section 304 of the IIRIRA repealed § 212(c) of the INA and replaced it with 8 U.S.C. § 1229b, which prohibits the Attorney General from cancelling the removal of an alien who has ever "been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3); IIRIRA, Pub. L. No. 104-208, § 304(a)-(b), 110 Stat. 3009 (1996). With some exceptions not relevant here, this provision did not become effective until April 1, 1997, and by its terms applied to removal proceedings that commenced on or after that date. *Id*. at § 309(a). As discussed in *St. Cyr*, 533 U.S. at 321-26, this provision raised retroactivity concerns when applied to some aliens, but it does not raise retroactivity concerns when applied to Garcia-Echaverria.

were obtained through plea agreements and who, notwithstanding those convictions, *would have been eligible for [discretionary cancellation of removal] at the time of their plea under the law then in effect*." 533 U.S. at 326 (emphasis added). Because he pleaded guilty and became ineligible for a waiver of deportation after the AEDPA was enacted on April 24, 1996, denying Garcia-Echaverria relief from deportation/removal does not raise any retroactivity concerns. Although Garcia-Echaverria was convicted pursuant to a guilty plea prior to the effective date of the IIRIRA, he could not have pleaded guilty in reliance on his ability to obtain a discretionary cancellation of removal because under the AEDPA he was not eligible for relief at the time he pleaded guilty.

## IV. CONCLUSION

For the forgoing reasons, we **AFFIRM** the district court's denial of Garcia-Echaverria's petition for a writ of habeas corpus.