**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 12 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ISILELI NIUAKIKU LATU,

          Petitioner-Appellant,

v.

JOHN ASHCROFT, Attorney General
of the United States of America;
MIKE COMFORT, Acting District
Director, Immigration and
Naturalization Service,

          Respondents-Appellees.

No. 03-1215

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 01-MK-1571 (OES))

---

Submitted on the briefs:

James Todd Bennett, El Cerrito, California, for Petitioner-Appellant.

Anthony W. Norwood, Senior Litigation Counsel, and Joshua E. Braunstein, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondents-Appellees.

---

Before **LUCERO** , **McKAY** , and **TYMKOVICH** , Circuit Judges.

---

**McKAY** , Circuit Judge.

Petitioner Isileli Niuakiku Latu appeals from the district court's decision to deny his habeas corpus petition brought under 28 U.S.C. § 2241. We conclude that habeas proceedings do not embrace review of the exercise of the attorney general's discretion in criminal alien cases; that Mr. Latu received due process throughout his removal proceedings; and that 8 U.S.C. § 1182(h) is not facially unconstitutional. We therefore dismiss in part and affirm in part. [1]

## I. Summary of facts and proceedings

Mr. Latu, a native of Tonga, was admitted to the United States as a permanent resident in 1972, at the age of thirteen. In 1999, he pleaded guilty in a California federal court to two counts of theft and receipt of U.S. mail. Mr. Latu began serving his sentence in California, but was later transferred to Colorado to complete it. In May 1999, the Immigration and Naturalization Service (INS)[2] issued a Notice to Appear out of one of its California offices, ordering Mr. Latu to show cause why he should not be removed on the basis that he had committed

---

[1]  After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2]  On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice. Its enforcement functions were transferred to the Department of Homeland Security.  *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002). Because the events at issue here predate that reorganization, we continue to refer to the INS in this opinion.

an aggravated felony. But the Notice to Appear failed to specify which section of 8 U.S.C. § 1101(a)(43) defined the felony he committed as an aggravated felony, and did not set a specific date, time, or place for hearing.

In July 2000, the INS commenced removal proceedings by filing the notice with the Immigration Court in Colorado and serving it on Mr. Latu. *See* 8 C.F.R. § 1003.14(a). In an amended notice, Mr. Latu was given a place to appear before an immigration judge (IJ). He appeared before an IJ on July 31 and was given three weeks to obtain counsel and respond to the charges. At an August 31 hearing, the IJ granted his counsel's request for a second extension of time to answer the charges. Mr. Latu challenged the sufficiency of the original notice at a hearing on September 11, 2000, during which the INS orally informed him that he was charged with violating § 1101(a)(43)(M), an offense involving fraud or deceit in which the loss to the victim or victims exceeds $10,000. Aplt. App. at 49. At counsel's request, the IJ gave Mr. Latu an additional sixteen days to respond to the charge. *Id.* at 50. The INS amended the charge to state a violation of § 1101(a)(43)(G) (a theft offense, including receipt of stolen property, for which the term of imprisonment is at least one year), on September 25, 2000. After another hearing in Colorado in October 2000, the IJ concluded that the INS had proved by clear and convincing evidence that Mr. Latu is an aggravated felon

subject to removal, and ordered Mr. Latu's removal to Tonga.  Aplt. App. at 59-60.

Mr. Latu appealed the removal order to the Bureau of Immigration Appeals (BIA), which dismissed the appeal by order entered May 18, 2001.  *Id*. at 97-100. The BIA also denied Mr. Latu's request for adjustment of status under 8 U.S.C. § 1255, determining that he is statutorily ineligible for such relief under § 1182(h) in light of his aggravated felony conviction.  *Id.* at 99-100.  And it held it had no authority to adjudicate the constitutionality of § 1182(h).  *Id.*  Mr. Latu did not file a petition for review to challenge either the BIA's final order of removal or its denial of his request for an adjustment of status.  Instead, he filed the present petition for writ of habeas corpus in the federal district court in Colorado.

Mr. Latu made the following arguments in his habeas petition: (1) failure to provide notice of date, time, and place of the hearing and of the underlying felony in the Notice to Appear constituted a violation of his Due Process rights; (2) the INS further violated his Due Process rights by commencing the removal proceedings in Denver, rather than in California (where his conviction on the predicate felony was obtained), thus denying him the opportunity to obtain rulings under more favorable Ninth Circuit precedent; (3) the INS failed to prove that the Mr. Latu's conviction was sufficient to support

his removal; and (4) § 1182(h) is facially unconstitutional, as it deprives lawful permanent residents who have committed aggravated felonies an opportunity to adjust their status that is available to aliens who do not have permanent-resident status.

With respect to the deficiencies in the Notice to Appear, the district court concluded that Mr. Latu eventually received all the process he was due and that he was not prejudiced by the initial lack of information. With respect to the government's choice of venue for the removal proceedings, the court rejected the government's argument that the decision was a discretionary one outside the court's jurisdiction to review, but found that the choice of venue did not prejudice Mr. Latu. The district court held that Mr. Latu should have raised his argument that the government failed to prove by sufficient evidence that he had been convicted of an aggravated felony in a petition for direct review and that he could not now raise it in a habeas proceeding. Finally, the court rejected Mr. Latu's challenge to the constitutionality of § 1182(h)(2).

Mr. Latu filed a timely appeal of the district court's order on three of the above four issues, dropping his third argument about the sufficiency of the evidence. The government contends that Mr. Latu could have raised all the issues on which he seeks habeas relief in a petition for direct review and that the district court had no jurisdiction to consider the merits of any of Mr. Latu's habeas

petition. The government also argues that the court did not have jurisdiction to consider Mr. Latu's challenge to the INS's decision to institute removal proceedings in Colorado, rather than in California, because that is a discretionary decision outside the purview of the court. In the alternative, the government urges affirmance on the merits.

## II. Standard of Review

We first consider whether the district court erred in concluding that it had habeas corpus jurisdiction to consider Mr. Latu's challenges to his final deportation order. We then address whether the district court properly denied the petition on the merits. We review both the jurisdictional issue and the district court's denial of habeas corpus *de novo. Itaeva v. INS*, 314 F.3d 1238, 1240 (10th Cir. 2003); *Sierra v. INS,* 258 F.3d 1213, 1218 (10th Cir. 2001).

## III. Jurisdiction

Because removal proceedings were commenced after April 1, 1997, the permanent provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) apply. *Tapia Garcia v. INS*, 237 F.3d 1216, 1218 n.2 (10th Cir. 2001).

**A. Procedural default.** We address first the government's claim that Mr. Latu did not exhaust his remedy of seeking an appeal to the court of appeals on direct review, and, therefore, the district court lacked habeas jurisdiction over his

case. The government cites Fifth Circuit cases that note, "under [IIRIRA's] transitional rules, habeas jurisdiction lies to consider constitutional and statutory claims that cannot be heard in this court on direct review," *Santos v. Reno*, 228 F.3d 591, 597 (5th Cir. 2000) (quotation omitted), and asserts that this "requirement of exhaustion" is maintained in the permanent rules by 8 U.S.C. § 1252(d). Aplee. Br. at 10-11. But under § 1252(d), "[a] court may review a final order of removal only if--(1) the alien has exhausted all administrative remedies available to the alien as of right . . . ." Appealing a decision of the BIA through a petition for review is not an administrative remedy – it is a judicial remedy. The government has apparently confused the concept of exhaustion of administrative remedies with the concept of procedural bar.

Generally, a habeas petition cannot be used to substitute for direct appeal. *Cf. United States v. Warner,* 23 F.3d 287, 291 (10th Cir. 1994) (holding that habeas proceedings "are not available to test the legality of matters which should have been raised on direct appeal"); *United States v. McBride*, 788 F.2d 1429, 1432-33 (10th Cir. 1986) (holding district court was without jurisdiction to consider appellant's collateral attack on an administrative suspension order that he had not timely appealed). And as the government points out, the Fifth Circuit limits habeas jurisdiction in immigration cases governed by the transitional rules to constitutional challenges that "cannot be considered on direct review by the

court of appeals." *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 305 (5th Cir. 1999). A procedural bar does not apply in Mr. Latu's case, however, because he has no right to direct review of his order of removal.

Congress has barred courts from reviewing final removal orders of aliens who have been convicted of certain aggravated felonies. 8 U.S.C. § 1252(a)(2)(C). Courts of appeals have jurisdiction only "to determine whether the jurisdictional bar applies. We may therefore decide whether the petitioner is (i) an alien (ii) deportable (iii) by reason of a criminal offense listed in the statute." *Tapia Garcia*, 237 F.3d at 1220. This authority to review the jurisdictional facts "stems not from Congress' creation of a particular remedy, but rather from the inherent jurisdiction of Article III federal courts to determine their jurisdiction." *Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir. 2001). Thus, although we retain our inherent authority to determine whether we have jurisdiction over deportation orders concerning alleged aggravated felons as described in *Tapia Garcia*, *supra*, "the plain language of § 1252(a)(2)(C) fairly explicitly strips the courts of appeals of jurisdiction to hear their claims on petitions for direct review." *Calcano-Martinez v. INS*, 533 U.S. 348, 351 (2001).

Because Mr. Latu does not contest his status as an aggravated felon subject to removal, thereby admitting the jurisdictional fact that strips the court of jurisdiction to review his final order of removal, he has not failed to seek an

available judicial remedy, and he is not procedurally barred from habeas review in the district court. *See Noriega-Lopez v. Ashcroft,* 335 F.3d 874, 878 (9th Cir. 2003) (holding that § 1252(a)(2)(C) deprives court of appeals of jurisdiction over constitutional questions as well as other questions presented in petition for review by removable alien who has committed qualifying aggravated felony); *Ramtulla v. Ashcroft*, 301 F.3d 202, 203 & n.2 (4th Cir. 2002) (dismissing petition for direct review under § 1252(a)(2)(C) for lack of jurisdiction because alien had committed aggravated felony, but noting habeas review was available to address constitutional questions), *cert. denied*, 539 U.S. 927 (2003); *Mansour v. INS*, 123 F.3d 423, 426 (6th Cir. 1997) (declining to address constitutionality of AEDPA § 440(a) because court presumed that habeas jurisdiction was available to address petitioner's constitutional claims).

Citing *Moore v. Ashcroft*, 251 F.3d 919 (11th Cir. 2001), the government contends that Mr. Latu could still have presented his constitutional issues in a petition for direct review notwithstanding the jurisdiction-stripping language of § 1252(a)(2)(C). We disagree. *Moore's* statement that § 1252(a)(2)(C) did not prevent it from considering important constitutional issues in a petition for review is based on *Richardson v. Reno*, 180 F.3d 1311 (11th Cir. 1999), which held that IIRIRA repealed district court jurisdiction over habeas cases where the petitioner is subject to a removal order. Accordingly, since habeas review was no longer

available under *Richardson's* interpretation, review of constitutional issues had to be attainable in a petition for direct review, or IIRIRA would run afoul of the Suspension Clause. *Richardson*, 180 F.3d at 1315 & 1316 n.5. The Supreme Court later overruled *Richardson's* analysis and holding, concluding that criminal aliens have no right to direct review, but retain the residual right to seek relief under the traditional habeas statute. *See INS v. St. Cyr,* 533 U.S. 289, 312-14 (2001); *and see Bejacmar v. Ashcroft*, 291 F.3d 735, 736-37 (11th Cir. 2002) (noting that *Richardson* had been overruled).

Subsequently, in *Calcano-Martinez*, the Supreme Court rejected the petitioners' suggestion that it should construe § 1252(a)(2)(C) to mean that courts of appeals are stripped of direct review "over only some matters, leaving in place their jurisdiction to directly review petitions raising claims previously cognizable under [28 U.S.C.] § 2241" because there was no support in the text or history of

§ 1252 for such a construction. [3] 533 U.S. at 351. Accordingly, the Supreme Court affirmed the Second Circuit's holdings that it lacked jurisdiction over a petition for direct review, and that § 1252 did not preclude the petitioners from pursuing habeas relief in the district court under § 2241. [4] *Id.* at 349-50, 352.

Thus, we disagree with the government's argument that Mr. Latu could have raised all the issues in his habeas corpus petition in a petition for direct

---

[3] The Supreme Court noted that the government conceded that courts of appeals have jurisdiction to hear petitions challenging the factual determinations that trigger the jurisdiction-stripping provisions of § 1252. But it declined to squarely address the government's statement that courts of appeals retained jurisdiction to review "substantial constitutional challenges" in a petition for direct review because the petitioners' direct-review petitions did "not raise any of these types of issues." 533 U.S. at 350 n.2. It seems, however, that the Court rejected this concession by its explicit holding rejecting petitioners' argument that § 1252 left in place the courts of appeals' direct-review jurisdiction to review matters cognizable under § 2241. *Id.* at 351.

[4] For the same reasons that we decline to follow the Eleventh Circuit's holding in *Richardson*, we also disagree with the analysis presented in *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667 (7th Cir. 2003). The Seventh Circuit adopted *Richardson's* analysis in *LaGuerre v. Reno*, 164 F.3d 1035, 1040 (7th Cir. 1998), but declined to alter its view that it retains direct-review jurisdiction over substantial constitutional issues in *Robledo-Gonzales* even after *Richardson's* analysis had been rejected by *St. Cyr* and *Calcano-Martinez*. *See* 342 F.3d at 679-80. In addition, *Robledo-Gonzales* was decided under the transitional rules, and we have previously rejected the Seventh Circuit's analysis of direct-review and habeas jurisdiction under those rules. *See Berehe v. INS,* 114 F.3d 159, 161-62 (10th Cir. 1997); *Jurado-Gutierrez v. Greene,* 190 F.3d 1135, 1142 n.3 (10th Cir. 1999).

-11-

review.  We conclude that Mr. Latu properly filed a timely habeas petition to bring his constitutional claims that were not reviewable on direct review under § 1252(a)(2)(C).  *See Jurado-Gutierrez v. Greene,* 190 F.3d 1135, 1145-47 (10th Cir. 1999) (holding that review under § 2241 is still available notwithstanding language in § 1252(a)(2)(C) barring review "by any court" of final orders of removal for aliens deportable by reason of having committed a criminal offense, and distinguishing between direct and collateral review).

**B.  Jurisdiction to review discretionary decision.**  We reach a different result on the issue of the district court's habeas jurisdiction to review the attorney general's prosecutorial discretion to commence proceedings in Denver instead of in Los Angeles. Section 1252(g) provides,

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  While this provision does not strip the district court of § 2241 habeas jurisdiction, *see Riley v. INS*, 310 F.3d 1253, 1256 (10th Cir. 2002), Mr. Latu cannot allege a constitutional or legal right to have removal proceedings against him commenced in a particular place–that decision is left to the unfettered discretion of the attorney general.  He therefore cannot satisfy the requirement of stating that he is being held in violation of the federal laws or

-12-

Constitution, *see* 28 U.S.C. § 2241(c), and the district court had no jurisdiction to review his claim. *See Bakhtriger v. Elwood*, 360 F.3d 414, 420 (3d Cir. 2004) (holding that "habeas proceedings do not embrace review of the exercise of discretion" in criminal alien cases); *Bravo v. Ashcroft*, 341 F.3d 590, 592 (5th Cir. 2003) ("Although federal courts retain habeas jurisdiction to review statutory and constitutional claims, there is no jurisdiction to review denials of discretionary relief."); *Carranza v. INS*, 277 F.3d 65, 73 (1st Cir. 2002) (holding that a criminal alien who does not have the right to demand the exercise of discretion cannot challenge its non-exercise by means of habeas review); *Gutierrez-Chavez v. INS*, 298 F.3d 824, 828 (9th Cir. 2002) (stating that habeas proceedings carry a more limited scope of review than direct-review proceedings); *Sol v. INS*, 274 F.3d 648, 651 (2d Cir. 2001); *Bowrin v. INS*, 194 F.3d 483, 490 (4th Cir. 1999) ("Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited."); *cf. Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291, 1293 (10th Cir. 2001) (holding that statutes restricting judicial review of discretionary decisions do not preclude review of challenges to the constitutionality of INS regulations, but holding that petitioners' failure to receive discretionary relief does not rise to a constitutionally protected interest). We join our sister circuits in concluding that the district court lacked jurisdiction to

-13-

review the attorney general's exercise of discretion through habeas review. The district court should have dismissed that claim.

## IV. Merits analysis

The district court properly considered two issues in its habeas review: whether Mr. Latu's Due Process rights were violated by the INS's initial failure to include mandatory information in the Notice to Appear; and whether § 1182(h) is facially unconstitutional as violative of his right to equal protection. After careful consideration, for substantially the same reasons stated in the district court's March 13, 2003 order, we conclude that the district court did not err in holding that Mr. Latu suffered no prejudice from the defects in the notice. The defects were corrected and Mr. Latu was given all the time he needed to meet the charges. We reject Mr. Latu's argument that, because the initial notice was defective, the attorney general's subsequent acts in effecting his removal were ultra vires. An official act does not become ultra vires if the officer was statutorily empowered to act but may have acted erroneously. *See Wyoming v. United States*, 279 F.3d 1214, 1229-30 (10th Cir. 2002); *cf. Noriega-Lopez*, 335 F.3d at 883 (holding that BIA acted ultra vires because statute did not give it authority to issue deportation orders). Mr. Latu received all the process he was due.

We further conclude that the district court properly determined that

-14-

§ 1182(h) has a rational basis that survives an equal protection challenge. Section 1182(h) prohibits the attorney general from granting a waiver of inadmissibility to "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . ." § 1182(h)(2). But aliens who have not been admitted for permanent residence are eligible to apply for a waiver. *In re Michel* , 21 I.& N. Dec. 1101, 1104, 1998 WL 40407 (BIA 1998). "[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993). On rational-basis review, "those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id.* at 314-15 (quotation omitted).

The Supreme Court "has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens," and it has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments [is] largely immune from judicial control." *Fiallo v. Bell* ,

-15-

430 U.S. 787, 792 (1977) (quotations omitted). Thus, in determining whether a rational basis exists for making distinctions between classes of aliens, we are especially deferential. *See Lara-Ruiz v. INS*, 241 F.3d 934, 947 (7th Cir. 2001).

As the district court noted, every other circuit that has addressed the constitutionality of § 1182(h) has upheld the statute against an equal protection challenge. *See, e.g.*, *Taniguchi v. Schultz*, 303 F.3d 950, 957-58 (9th Cir. 2002); *De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 640 (3d Cir. 2002); *Jankowski-Burczyk v. INS*, 291 F.3d 172, 176 (2d Cir. 2002) (holding that, since Congress created separate classifications for lawful permanent residents (LPRs) and non-lawful permanent residents (NLPRs), and treated each class differently throughout the immigration statutes, LPRs and non-LPRs are not similarly situated, and different treatment of them does not violate the equal protection component of the Due Process Clause); *Lukowski v. INS*, 279 F.3d 644, 647-48 (8th Cir. 2002); *Lara-Ruiz*, 241 F.3d at 947-48; *Moore*, 251 F.3d at 925-26.

The Seventh Circuit set out several possible rational bases for § 1182(h)'s distinction. First, "[o]ne of Congress' purposes in enacting reforms . . . was to expedite the removal of criminal aliens from the United States." *Lara-Ruiz*, 241 F.3d at 947. "While it might have been wiser, fairer, and more efficacious for Congress to have eliminated . . . relief for non-LPR aggravated felons as well, the step taken by Congress was a rational first step toward achieving the legitimate

goal of quickly removing aliens who commit certain serious crimes from the country, and as such it should be upheld." *Id.* The Seventh Circuit also noted that LPRs have rights and privileges based on their status that are not shared by non-LPRs, and that LPRs have closer ties to the United States through work and family. *Id.* "Therefore, Congress may rationally have concluded that LPRs who commit serious crimes despite these factors are uniquely poor candidates for . . . waiver of inadmissibility." *Id.* Mr. Latu has not negated the rational bases of the separate classifications. We join our sister circuits in holding that § 1182(h) does not violate the equal protection component of the Due Process Clause.

The judgment of the district court is AFFIRMED in part and REMANDED for dismissal of Mr. Latu's claim challenging the attorney general's decision to commence removal proceedings in Colorado.

-17-