**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ENRIQUE COLIN BALLESTEROS,

  Petitioner,

v.

ALBERTO R. GONZALES,[1]

  Respondent.

No. 04-9528

(B.I.A. No. A90-622-008)

**ORDER ON PETITION FOR REHEARING**

Before **HENRY**, **McKAY,** and **TYMKOVICH**, Circuit Judges.

Petitioner requests panel rehearing or rehearing en banc. We previously held, *inter alia*, that the Board of Immigration Appeals ("BIA") properly applied Tenth Circuit law to determine that Petitioner was removable as an aggravated felon because of a state felony drug possession conviction. *Ballesteros v. Ashcroft*, 452 F.3d 1153 (10th Cir. 2006). We subsequently granted Petitioner's motion to stay the mandate pending the Supreme Court's decision in *Lopez v. Gonzalez*, 127 S. Ct. 625 (2006). In *Lopez*, the Court overturned our line of cases holding that state felony drug offenses qualify as aggravated felonies even if not

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as the respondent in this case.

punishable as felonies under federal law.  *See Gonzalez-Gonzalez v. Weber*, 472

F.3d 1198, 1202 (10th Cir. 2006).

We agree with the parties that this case must be remanded to the BIA for

reconsideration and to allow Petitioner an opportunity to seek relief from

removal.  We accordingly **REMAND** for further proceedings in light of *Lopez,*

**GRANTING** the petition for rehearing in this respect.[2]  However, our previous

disposition in this appeal remains fully effective except to the extent that it is

inconsistent with *Lopez* or this order.

Entered for the Court

Monroe G. McKay
Circuit Judge

---

[2] The suggestion for rehearing en banc was circulated to the panel members and the active judges of the court.  No member of the panel nor judge in active service on the court having requested a poll, the suggestion for rehearing en banc is denied.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ENRIQUE COLIN BALLESTEROS,

        Petitioner,

v.

JOHN ASHCROFT,

        Respondent.

No. 04-9528

---

**Petition for Review of a Decision of**
**the Board of Immigration Appeals**
**(No. A90-622-008)**

---

Jeff Joseph, Denver, Colorado, for Petitioner.

Blair T. O'Connor, Senior Litigation Counsel (Emily Anne Radford, Assistant
Director, with him on the brief), United States Department of Justice, Civil
Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

---

Before **HENRY**, **McKAY,** and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

In 1999, Mr. Ballesteros, a lawful permanent resident of the United States,

pleaded guilty to one count of felony possession of a controlled substance. Under

the terms of the plea agreement, the Idaho court withheld judgment, and Mr. Ballesteros was placed on three years' probation, which Mr. Ballesteros completed without incident.

Subsequent to Mr. Ballesteros' completion of his probation, the Department of Homeland Security ("DHS") reorganized its detention boundaries and formalized its already-existing policy of detaining in Colorado aliens arrested in Montana and Idaho. In 2003, agents from the U.S. Immigration and Customs Enforcement ("ICE") arrested Mr. Ballesteros in Idaho for immigration violations and transferred him to an immigration detention facility in Aurora, Colorado.

To the immigration judge in Colorado Mr. Ballesteros argued that his previous drug conviction was neither a conviction of a controlled substance offense nor an aggravated felony offense that would qualify him for removal without relief. He argued that, under Ninth Circuit law, a first-time convicted alien who qualified for drug treatment under the Federal First Offender Act ("FFOA") did not have a conviction for immigration purposes. Mr. Ballesteros also filed a motion for change of venue because, he argued, all the important aspects of the case occurred in Idaho and it would be more convenient for potential witnesses to travel to Seattle rather than Colorado.

The immigration judge rejected Mr. Ballesteros' arguments and held that his conviction constituted a conviction of a controlled substance offense and an aggravated felony offense under Tenth Circuit law. Such a conviction would

make Mr. Ballesteros ineligible for any relief from removal and render any change in venue meaningless since there would be "no real point in having any witnesses and so the convenience to witnesses [was] not [of] substantial concern . . . ." The immigration judge treated Mr. Ballesteros' motion for change of venue as an improper attempt to secure the benefit of Ninth Circuit law and ordered that Mr. Ballesteros be removed.

Mr. Ballesteros timely filed an appeal to the Board of Immigration Appeals ("BIA") challenging the denial of his change of venue request and the application of Tenth Circuit law to his case. He also argued that the immigration judge improperly applied a previous BIA opinion that defined what constituted an aggravated felony because the BIA opinion post-dated his plea and conviction. The BIA upheld the immigration judge's denial of the change of venue motion as an appropriate exercise of discretion and held that Tenth Circuit law applied in the case. The BIA noted that the Tenth Circuit has often applied its own law to determine whether a conviction from another circuit constituted an aggravated felony.

In response to the allegation that the immigration judge impermissibly applied a BIA case retroactively, the BIA explained that its "prior interpretation of [the aggravated felony statute] was not an administrative 'rule' in any meaningful sense" and that moving to a policy of following circuit court authority did not implicate retroactivity concerns. The BIA further held that, even if its

previous interpretation were a rule, the Supreme Court has "acknowledged the power of administrative agencies to announce 'new rules' through adjudication rather than formal rulemaking and placed the burden of proving detrimental reliance on the opponents of the new rule." Because Mr. Ballesteros did not provide any evidence of detrimental reliance, the BIA held that he had not met his burden, and BIA affirmed the immigration judge's order of removal. Mr. Ballesteros now appeals the BIA's order of removal to this court.[1]

Mr. Ballesteros argues to this court that (1) Ninth Circuit law should be applied in this case; (2) the change in definition of conviction for immigration purposes violated his settled expectations regarding his plea agreement; (3) the DHS detention boundary reorganization violated his due process rights because the change was not pursuant to the Administrative Procedure Act's ("APA") notice and comment requirements; (4) the BIA's decision denying the motion to change venue constituted an abuse of discretion; and (5) ICE arrested him without a valid warrant, rendering the deportation proceedings unfair.

---

[1]Mr. Ballesteros has also petitioned the U.S. District Court for the District of Colorado for a writ of habeas corpus. In his habeas petition, Mr. Ballesteros raised all the same arguments that he raises before this court. The Colorado district court granted Mr. Ballesteros' subsequent motion for change of venue, transferring the case to the U.S. District Court for the District of Idaho, and also ordered that the government transfer Mr. Ballesteros to the jurisdiction of the Idaho district court. ICE has since placed Mr. Ballesteros in a supervised release program. The Idaho district court is staying the habeas proceedings pending the resolution of this appeal.

## I. Jurisdiction

Our review of immigration decisions is limited by statute. Congress has eliminated judicial review of both the BIA's discretionary decisions, 8 U.S.C. § 1252(a)(2)(B), and of any "final order of removal against an alien who is removable by reason of having committed" certain offenses, among them aggravated felonies and controlled substance offenses, 8 U.S.C. § 1252(a)(2)(C). But these jurisdictional restrictions are subject to two exceptions. First, we retain jurisdiction to examine certain aspects of an alien's removal, even when removal is for an aggravated felony or controlled substance offense. We have explained that, in reviewing final orders of removal for aggravated felonies, "[c]ourts of appeals have jurisdiction . . . 'to determine whether the jurisdictional bar applies. [Courts] may therefore decide whether the petitioner is (i) an alien (ii) deportable (iii) by reason of a criminal offense listed in the statute.'" *Latu v. Ashcroft*, 375 F.3d 1012, 1017 (10th Cir. 2004) (quoting *Tapia Garcia v. INS*, 237 F.3d 1216, 1220 (10th Cir. 2001)). We therefore have jurisdiction to review any of Mr. Ballesteros' claims that challenge the BIA's order of removal by arguing that his plea and conviction do not constitute an offense that warranted removal without relief.

The second exception comes from the recently enacted REAL ID Act. In *Calcano-Martinez v. INS*, 533 U.S. 348, 350 n.2 (2001), the Supreme Court recognized a narrow exception to § 1252(a)(2)(C)'s broad jurisdiction-stripping

provision and noted that courts of appeals retained "jurisdiction to review 'substantial constitutional challenges' raised by aliens who come within the strictures of § 1252(a)(2)(C)." *See also Morales Ventura v. Ashcroft*, 348 F.3d 1259, 1262 (10th Cir. 2003). With the REAL ID Act, Congress expanded this exception to § 1252's jurisdiction-stripping provision. Pub. L. No. 109-13, 119 Stat. 231, 310 (2005). The new subparagraph of § 1252 states that "[n]othing in [1252(a)(2)(B) or (C)], or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review . . . ." 8 U.S.C. § 1252(a)(2)(D); *see Perales-Cumpean v. Gonzales*, 429 F.3d 977, 982 n.4 (10th Cir. 2005). Congress expressly intended this new provision to apply retroactively to all final deportation orders. REAL ID Act § 106(b) (noting that the law applies "to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment [May 11, 2005]."). Consequently, unless another subparagraph of § 1252 precludes our review of Mr. Ballesteros' claims that raise either constitutional or legal questions, we also have jurisdiction to review those claims.[2]

---

[2]The parties in this case submitted their briefs before the REAL ID Act was enacted. Because the government relied on jurisdictional arguments that the REAL ID Act eliminated, it filed a motion to withdraw its blanket argument that this court lacks the jurisdiction to hear Mr. Ballesteros' constitutional and non-
(continued...)

## II. Mr. Ballesteros' Arguments that He Does Not Qualify for Removal Without Relief

Mr. Ballesteros presents two arguments that his past offenses should not qualify for removal without relief. He admits both that he is an alien and that he has a prior conviction, but he disputes the government's position that his prior conviction should subject him to removal without relief. First, he argues that Ninth Circuit law should apply to this case. Second, he argues that a change in the definition of conviction for immigration purposes violated his settled expectations regarding his plea agreement. If Mr. Ballesteros is correct that Ninth Circuit law should apply, then he is entitled to relief from his removal order.

The BIA correctly dismissed Mr. Ballesteros' argument that the BIA should apply Ninth Circuit law to his case. Before the BIA and in his brief to this court, Mr. Ballesteros did not dispute that under Tenth Circuit law his conviction for drug possession constitutes an aggravated felony for immigration purposes. Instead, he argued that Ninth Circuit law controlled the facts of his case. But the choice of law in an immigration decision is not governed by the same kind of choice of law analysis applied in a diversity action. As the BIA noted in its opinion, "an immigration judge should analyze removability and relief issues

---

[2](...continued)
jurisdictional claims. We grant the government's motion. Accordingly, we do not address that issue.

using only the decisions of the circuit in which he or she sits . . . since it is to that circuit that any appeal from a final order of removal must be taken." Further, an alien has "no legal right to have removal proceedings commenced against him in a particular place," *Latu*, 375 F.3d at 1019, and "no litigant has a right to have the interpretation of one federal court rather than that of another determine his case," *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993).

We routinely apply Tenth Circuit law to determine whether a conviction from another jurisdiction constitutes an aggravated felony or controlled substance offense. *See United States v. Castro-Rocha*, 323 F.3d 846, 851-52 (10th Cir. 2003); *Tapia-Garcia v. INS*, 237 F.3d 1216, 1221-23 (10th Cir. 2001); *United States v. Cabrera-Sosa*, 81 F.3d 998, 1000-01 (10th Cir. 1996). We held in *Elkins v. Comfort*, 392 F.3d 1159, 1163-64 (10th Cir. 2004), that a foreign drug conviction, even if it would have qualified for FFOA, remained a conviction for immigration purposes. *Accord United States v. Zamudio*, 314 F.3d 517, 521-22 (10th Cir. 2002) ("[A] plea in abeyance [in another jurisdiction] satisfies the definition of conviction laid out in [the immigration statute]."). There is no meaningful distinction between Mr. Ballesteros' conviction and the foreign conviction in *Comfort*. As the BIA recognized in another case, "except in the Ninth Circuit, a first-time simple drug possession offense expunged under a state rehabilitative statute is a conviction under section 101(a)(48)(A) of the [immigration act]." *In re Salazar-Regino*, 23 I. & N. Dec. 223, 235 (BIA 2002).

The BIA properly applied Tenth Circuit law and held that Mr. Ballesteros' prior conviction qualifies him for removal without relief.

Mr. Ballesteros also argues that the BIA should apply Ninth Circuit law so as not to retroactively disturb his settled expectation that his plea agreement would not affect his immigration status. But to prevail on this claim, Mr. Ballesteros must show that he relied on Ninth Circuit law when entering into his plea agreement. Hindering this argument is the fact that the Ninth Circuit decision on which Mr. Ballesteros claims to have relied was issued nearly eight months after his plea agreement. *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000). Reliance is particularly difficult for Mr. Ballesteros to prove because, at the time of his plea agreement, the controlling BIA decision on the issue of drug possession held that first-time drug offenders remained convicted for immigration purposes notwithstanding the operation of various state rehabilitative statutes under the immigration law's then-new definition of "conviction." *In re Roldan*, 22 I. & N. Dec. 512, 528 (BIA 1999). Even if Mr. Ballesteros could make out a legal argument for reliance on Ninth Circuit law, he has not provided any record evidence to support this claim–for example, evidence that Mr. Ballesteros' acceptance of the plea was conditioned on the plea's inability to affect his immigration status. The record contains only allegations by counsel of such reliance, but these allegations are not evidence. *See Carrillo-Gonzalez v. INS*, 353 F.3d 1077, 1079 (9th Cir. 2003).

### III.  Mr. Ballesteros' Claims and the REAL ID Act

Next, Mr. Ballesteros raises an argument that falls within the REAL ID Act's expansion of this court's jurisdiction to review constitutional claims or questions of law.  He argues that DHS violated the APA and, therefore, his due process rights when it reorganized the detention boundaries without notice and comment.  Before the REAL ID Act, this claim would have been precluded by either § 1252(a)(2)(B)–which precludes review of the BIA's denial of discretionary relief–or § 1252(a)(2)(C)–which precludes review of removal orders for criminal aliens–but it now falls within our jurisdiction.  8 U.S.C. § 1252(a)(2)(D).

The DHS reorganization did not, however, require the notice and comment process.  If a challenged agency action creates a "legislative rule," then full compliance with the APA's notice and comment processes is required.  *Mission Group Kansas, Inc. v. Riley*, 146 F.3d 775, 781 (10th Cir. 1998).  Legislative rules "affect[] individual rights and obligations."  *Morton v. Ruiz*, 415 U.S. 199, 232 (1974).  But "interpretive rules, general statements of policy or rules of agency organization, procedure or practice" can be implemented without notice and comment.  5 U.S.C. § 553(b)(A).  Interpretive rules must "'be derivable from the statute that it implements by a process fairly to be described as interpretive; that is, there must be a path that runs from the statute to the rule, rather than merely consistency between statute and rule.'"  *Mission*, 146 F.3d at 783 n.8

-10-

(quoting Richard A. Posner, *The Rise and Fall of Administrative Law*, 72 Chi.-Kent L. Rev. 953, 962 (1997)).

Mr. Ballesteros relies on the unpublished opinion of *United States v. Seward*, Nos. 79-1711 et seq., 1981 U.S. App. LEXIS 21300 (10th Cir. Jan. 5, 1981), for support that the DHS reorganization was a substantive rule. In *Seward*, the Department of Energy expanded the trespass buffer zone around a nuclear facility without notice and comment. *Id.* at \*8. Sixteen days later, Seward and others protested on the property and were arrested for trespass. *Id.* The change in the buffer zone "brought the area in question within the scope of the trespass regulations for the first time, thereby *creating* a criminal offense where there had been none." *Id.* at \*10 (emphasis added). In this case, however, the DHS reorganization did not create a new offense or affect a legal obligation. As discussed earlier, aliens have no legal right to have the removal proceedings in a particular location. *Latu*, 375 F.3d at 1019. And there is no evidence that the change upset any settled legal expectations. That the reorganization had a substantive effect on the Mr. Ballesteros' removal proceedings does not mean that the change was a legislative rule. *See Air Transport Ass'n of Am. v. Dep't of Transp.*, 900 F.2d 369, 383 (D.C. Cir. 1990) (Silberman, J., dissenting) ("Of course, procedure impacts on outcomes and thus can virtually always be described as affecting substance, but to pursue that line of analysis results in the obliteration of the distinction [between legislative and interpretive rules] that

Congress demanded.").

The DHS reorganization was an interpretation of the statute that gives the DHS the authority to conduct removal proceedings. The implementing statute gives DHS the authority to "arrange for appropriate places of detention for aliens detained pending . . . a decision on removal." 8 U.S.C. § 1231(g)(1). The DHS reorganization merely interpreted the grant of statutory authority, and that interpretation did not create or alter a legal obligation. In this case, the pertinent right is Mr. Ballesteros' right to choose the location of removal hearing, and that right was not affected by the DHS reorganization–he did not have the right before, and he does not have the right after. Because the DHS reorganization was an interpretive rule, it was exempt from the APA's notice and comment process and is therefore valid.

Even after the REAL ID Act, Mr. Ballesteros' remaining arguments–that the BIA abused its discretion in denying his motion to change venue and that he was arrested without a warrant–still fall outside of our jurisdiction. The regulation governing change of venue in removal proceedings states that "[t]he [i]mmigration [j]udge, *for good cause*, *may* change venue only upon motion by one of the parties [and] only after the other party has been given notice and an opportunity to respond to the motion to change venue." 8 C.F.R. § 1003.20(b) (emphasis added). This regulation gives the immigration judge complete discretion, even to the extent that the immigration judge may still deny the a

change of venue motion when good cause is present. *See, e.g., Chow v. INS*, 12 F.3d 34, 39 (5th Cir. 1993) ("The decision of whether to grant a change of venue is committed to the [agency's] sound discretion . . . ."). Because the BIA's discretionary decisions are precluded from our review by 8 U.S.C. § 1252(a)(2)(B)(ii), the venue argument must raise either constitutional question or raise a question of law.

Mr. Ballesteros' venue claim raises neither and is, therefore, beyond our review. While in the criminal context at least, "venue is a right of constitutional dimension," *United States v. Miller*, 111 F.3d 747, 749 (10th Cir. 1997), an alien has "no legal right to have removal proceedings commenced against him in a particular place," *Latu*, 375 F.3d at 1019, and Mr. Ballesteros' venue arguments focus on matters of convenience and not constitutional violations. Neither does his venue claim present a question of law. In civil cases, the question of whether a litigant has brought an action in the proper court is a question of law, while the question of whether to dismiss or transfer an action filed in an improper venue is "within the district court's sound discretion" and reviewed for abuse of discretion only. *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998) (citing *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190 (10th Cir. 1998)). Mr. Ballesteros' argument is not that venue was improper in Colorado but that venue was more convenient in the Ninth Circuit. His argument attacks the BIA's discretion to, "for good cause," transfer a removal proceeding to another venue.

This does not present a question of law. *See Bautista-Contreras v. INS*, No. 90-9589, 1991 WL 164276, at *1 (10th Cir. Aug. 21, 1991) (applying an abuse of discretion standard of review to the BIA's denial of a motion for change of venue before the statutory prohibition on our review of the BIA's discretionary decisions); *accord Slingluff v. Occupational Safety & Health Review Comm'n*, 425 F.3d 861, 866 (10th Cir. 2005) ("[W]e review an agency's decision under the arbitrary, capricious or abuse of discretion standard, [and] we must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors. However, these limitations do not apply to questions of law."). Because Mr. Ballesteros' venue claim presents neither a question of law nor a constitutional question, our review of it is precluded by 8 U.S.C. § 1252(a)(2)(B)(ii).

Last, we hold that Mr. Ballesteros' constitutional claims, chief among them that he was arrested without warrant, are outside our jurisdiction. Our review of this type of constitutional claim is precluded by a subsection of § 1252 for which the REAL ID Act's "constitutional claim" exception does not apply. In addition to the already discussed specific limitations on review, § 1252 also contains a general jurisdictional limitation–it limits our review to "final order[s] of removal." 8 U.S.C. § 1252(a)(1). Mr. Ballesteros analogizes his situation to that of a criminal defendant and seeks to use alleged constitutional violations to overturn his removal, while he hopes that any future removal proceedings would

be conducted in the Ninth Circuit. But removal is a civil, not criminal, proceeding, and the "various protections that apply in the context of a criminal trial do not apply in a deportation hearing." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). As the Supreme Court noted, "[t]he Court of Appeals have held, for example[,] that the absence of Miranda warnings does not render an otherwise voluntary statement by the respondent inadmissible in a deportation case." *Id.* at 1039. No remedy for the alleged constitutional violations would affect the BIA's final order of removal. Any remedy available to Mr. Ballesteros would lie in a *Bivens* action. He is not, therefore, in the same position as a criminal defendant and is not, even if his allegations prove true, entitled to a reversal of his removal based on a "fruit of the poisonous tree" theory. Because the alleged constitutional deficiencies are beyond the scope of the BIA's final order of removal, they are also beyond our review.

We **AFFIRM** the BIA's final order of removal.