**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LUIS ALONSO RIVERA-ORTIZ,

        Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

No. 11-9530
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

**I**

    In June 1994, Luis Alonso Rivera-Ortiz, a lawful permanent resident, pled guilty

to both sexual abuse of a child and forcible sexual abuse under Utah law for the sexual

abuse of his stepdaughter. By all accounts, he is a model of reformation. The state

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

district court sentenced him to a 1-15 year term of imprisonment, but stayed the sentence pending the satisfactory completion of 90 days in jail.  Because of good behavior, he was released after 60 days.  He complied fully with a ten-year sex-offender registration requirement.  He has not committed any new offenses in the 12 years that have passed since his conviction.  He has remarried the victim's mother and reconciled with the victim.  The victim even testified that she now trusts him to babysit her own children.

Nevertheless, in 2006, the Immigration and Nationalization Service (INS) began proceedings to deport Rivera-Ortiz to his native El Salvador because his crimes of sexual abuse qualified as aggravated felonies under the Immigration and Nationality Act. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (2006).

In proceedings before an immigration judge (IJ), Rivera-Ortiz conceded his crime was an aggravated felony subjecting him to removal.  However, he sought discretionary relief—a waiver of inadmissibility—from the IJ under former § 212(c) of the Immigration and Nationalization Act, *see* 8 U.S.C. § 1182(c).[1]  The IJ acknowledged his reformation, his family ties in the United States, and even his family's reliance on his employment income.  Nevertheless, the IJ concluded the gravity of Rivera-Ortiz's crime outweighed these positive equities.  The IJ was particularly motivated by the betrayal of trust inherent in Rivera-Ortiz's crime, given his role as the victim's stepfather.  The IJ also concluded Rivera-Ortiz's crime was particularly grave because he had "engaged in

---

[1]  Although § 212(c) (formerly 8 U.S.C. § 1182) was repealed in 1996, its "broader relief . . . remain[s] available, on the same terms as before, to an alien whose removal is based on a guilty plea entered before [its] repeal." *Judulang v. Holder*, 132 S. Ct. 476, 481 (2011) (citing *INS v. St. Cyr*, 533 U.S. 289 (2001)).

an increasingly serious sexual relationship with his stepdaughter culminating in multiple instances of intercourse." (R. at 202.)

Pertinent to this conclusion was a police report regarding the sexual abuse. At the hearing before the IJ, Rivera-Ortiz objected to the accuracy and reliability the police report. According to the report, he began abusing his stepdaughter when she was six years old and he continued doing so until she reached 14. The abuse included weekly intercourse and was accompanied by threats to kill the stepdaughter and her mother if the abuse were revealed. Rivera-Ortiz has steadfastly denied these allegations, and, indeed, his stepdaughter's testimony confirmed his denials. As Rivera-Ortiz tells us, the abuse never included intercourse and did not start until the stepdaughter was nine years old. He also denies ever threatening to kill anyone.

In response to Rivera-Ortiz's objection, the IJ acknowledged the "degree" of the "sexual contact" could be disputed. (R. at 203.) Yet, because of other testimony corroborating the significant details of the police report, the IJ noted his decision to deny discretionary relief would not change even if the police report had not been admitted.

Rivera-Ortiz appealed from that denial to the Board of Immigration Appeals (BIA). In his appeal, he argued the IJ erred in considering the police report to assess the gravity of his crimes. The BIA did not explicitly address this argument in its order. Rather, the BIA's order framed the issue in more general terms as a review of the IJ's denial of discretionary relief. Acting through an individual member, the BIA dismissed Rivera-Ortiz's appeal in a "brief order affirming" pursuant to 8 C.F.R. § 1003.1(e)(5). The BIA acknowledged the "substantial equities" in Rivera-Ortiz's petition for

- 3 -

discretionary relief, but concluded the IJ "properly weighed the positive factors in this case against [Rivera-Ortiz's] egregious criminal behavior." (R. at 3.)

In conjunction with his appeal, Rivera-Ortiz filed a "Motion to Submit Evidence and Request Remand." In the motion, he requested to present evidence not previously available to the IJ about his "serious kidney disease." (R. at 15.) He also reported filing a state-court petition challenging his conviction on the ground that the immigration consequences had not been adequately disclosed to him. The motion conceded, however, that "the convictions have not yet been overturned." (R. at 19.) The BIA denied the motion. It reasoned the conviction "remained valid for immigration purposes," and the health-related evidence did not establish "that the grant of a section 212(c) waiver . . . would be in the interests of the United States." (R. at 3-4.)

## II

Rivera-Ortiz now petitions this court for review of the BIA's dismissal of his appeal. He contends the BIA violated his due process rights when it failed to explicitly discuss his argument that the IJ erred in considering the police report. In his view, had the BIA duly considered the issue, it would have concluded the IJ erred in denying him discretionary relief. Rivera-Ortiz's argument rests on faulty factual and legal premises.

As a factual matter, Rivera-Ortiz mistakenly equates the BIA's lack of discussion of his argument as a lack of consideration. The BIA resolved his arguments in a disposition by brief order as contemplated under 8 C.F.R. § 1003.1(e)(5). *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1203-04 (10th Cir. 2006). In such a case, the BIA's disposition becomes the final order of removal subject to our review. *Id.* Nevertheless,

- 4 -

dispositions by brief order may adopt the IJ's reasoning. *Uanreroro*, 443 F.3d at 1204; *see Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (we may affirm "on grounds raised in the IJ decision [if] they are relied upon by the BIA in its affirmance"). Here, the BIA agreed with the IJ's resolution of the case without supplying its own findings or analysis. By choosing to adopt the IJ's findings and analysis, including the IJ's rejection of his arguments related to the police report, the BIA duly considered the issue.[2]

As a legal matter, Rivera-Ortiz received all the process he was constitutionally due when he received his notice and opportunity to be heard before the IJ. There is no constitutional due-process right to appeal from the IJ's decision. *See Tsegay v. Ashcroft*, 386 F.3d 1347, 1353 (10th Cir. 2004). The BIA's order therefore complied with the requirements of constitutional due process.

### III

Rivera-Ortiz's challenges to the IJ's decision to deny discretionary relief are beyond our jurisdiction. Our jurisdiction to review a denial of discretionary relief is limited to "constitutional claims or questions of law." 28 U.S.C. § 1252(a)(2); *see also Ballesteros v. Ashcroft*, 452 F.3d 1153, 1156 (10th Cir. 2006). We review those claims and questions de novo. *Rivera Barrientos v. Holder*, 658 F.3d 1222, 1226 (10th Cir. 2011).

---

[2] When the BIA takes this approach, we can directly review—to the extent review is not otherwise precluded—those aspects of the IJ's analysis incorporated in the BIA's order. *See Uanreroro*, 443 F.3d at 1204; *Sidabutar*, 503 F.3d at 1123.

Rivera-Ortiz argues the IJ applied an impermissible "categorical legal bar" against discretionary relief, as evinced by the IJ's statement: "What the Court finds particularly troubling *in these types of cases* is the position of trust that [Rivera-Ortiz] found himself in." (R. at 166 (emphasis added).) Even if the IJ had done so, however, Rivera-Ortiz cites no statutes, rules, or cases prohibiting the IJ from taking a categorical approach to discretionary relief. Thus, in the absence of some statute or regulation prohibiting the IJ from using a categorical approach, we have neither jurisdiction to review the IJ's exercise of discretion nor any legal basis to declare this practice improper. *See* 8 U.S.C. § 1252(a)(2)(B) & (D) (stripping the courts of jurisdiction to review a denial of discretionary relief except as to "constitutional claims [and] questions of law"). Section 1252(a)(2) also forecloses any inquiry into whether, as Rivera-Ortiz argues, the IJ abused his discretion in denying relief or relied on clearly erroneous factfinding.[3]

_____

[3] Even if we were to review the IJ's factfinding, we would conclude it is amply supported by the evidence in the record. The police report the government introduced as an exhibit stated Rivera-Ortiz had "began having intercourse with her at age 9" and that "the victim stated intercourse happened on a weekly basis." (R. at 574.) In addition, Rivera-Ortiz's wife testified that Rivera-Ortiz was "having sex with her" daughter. (R. at 360.) Similarly, Rivera-Ortiz admitted the abuse included sexual intercourse in the following exchange between the IJ and Rivera-Ortiz at the hearing:

> Q. [By the IJ]: Okay. So it -- you testified earlier that the abuse began when you just began to inappropriate [sic] touch her, fondle her?
> A. [By Rivera-Ortiz]: Yes.
> Q. How many weeks after the abuse did it start to become intercourse?
> A. I don't remember. I think it could be, it could be years, Your Honor.
> Q. So you -- when did you -- at what age did you first have intercourse with [the victim]?
> A. I think -- I believe she was 10, 11, if I remember right.
> Q. Now, when you touched her, did you -- before you had intercourse, would you ask her to do things to you?

## IV

Section 1252(a)(2) likewise forecloses review of the BIA's denial of Rivera-Ortiz's motion to reopen and remand his case to the IJ for new evidence about his medical condition and his state-court conviction. The regulation governing motions to reopen does not specify any conditions under which it must be granted. *Matter of Coelho*, 20 I.&N. Dec. 464, 471 (B.I.A. 1992) (citing *INS v. Wang*, 450 U.S. 139, 143 n.5 (1981)). Thus, the regulation leaves the decision to the BIA's discretion, which moves it outside our jurisdiction to review. *See* 8 U.S.C. § 1252(a)(2).

The petition for review is DENIED. Petitioner's motion to proceed *in forma pauperis* is GRANTED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

A. No.
Q. You just touched her?
A. Yes.
Q. And so for how many times total, if you were to estimate, did you have intercourse with your stepdaughter?
A. I, I don't really recall the number, more than 20, I think. I wouldn't recall the number on that one.

(R. at 317-18.) While there is also evidence showing the abuse did not include sexual intercourse, the evidence in support of the IJ's decision provided the "substantial evidence" necessary to sustain the IJ's factfinding. *See Rivera Barrientos v. Holder*, 658 F.3d 1222, 1226 (10th Cir. 2011).